RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0230P (6th Cir.)
File Name: 00a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

BOYCE A. SMITH, a/k/a
Woody Smith,
            *Plaintiff-Appellee,*

v.

LEGGETT WIRE COMPANY, et
al.,
            *Defendants-Appellants.*

No. 98-6414

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 95-00439—Karl S. Forester, District Judge.

Argued: October 27, 1999

Decided and Filed: July 17, 2000

Before: MARTIN, Chief Judge; SUHRHEINRICH and
SILER, Circuit Judges.

————————————

## COUNSEL

**ARGUED:** Robert B. Craig, TAFT, STETTINIUS &
HOLLISTER, Covington, Kentucky, for Appellants. Susan
C. Sears, FROST & JACOBS, Lexington, Kentucky, for
Appellee. **ON BRIEF:** Robert B. Craig, Mark J. Sheppard,

1

TAFT, STETTINIUS & HOLLISTER, Covington, Kentucky, for Appellants. Susan C. Sears, Catherine S. Wright, FROST & JACOBS, Lexington, Kentucky, David R. Irvin, MOYNAHAN, IRVIN & SMITH, Nicholasville, Kentucky, for Appellee.

SUHRHEINRICH, J., delivered the opinion of the court, in which SILER, J., joined. MARTIN, C. J. (pp. 17-23), delivered a separate dissenting opinion.

————————————

## OPINION

————————————

SUHRHEINRICH, Circuit Judge. Defendants Adcom Wire Company and Leggett & Platt, Inc., appeal an order awarding Plaintiff Boyce A. Smith $100,000, plus attorney's fees and costs, for wrongful termination of employment based on a jury's finding of racial discrimination. Defendants claim that the district court erred in denying their post-verdict motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) because there was insufficient evidence to support the jury's finding that race was a substantially motivating factor in Adcom's decision to terminate Smith. Defendants also challenge the jury's finding that Leggett was sufficiently interrelated with Adcom to be held liable for Smith's wrongful termination. Finally, Defendants object to the district court's award of attorney's fees.

For the following reasons, we **REVERSE.**

### I.

Boyce A. Smith ("Smith"), an African-American, worked as a wire drawing machine operator at Adcom Wire Company ("Adcom") in Nicholasville, Kentucky from 1974 until 1994. Adcom is a wholly-owned subsidiary of Missouri-based Leggett & Platt, Inc. ("Leggett"). During those years, Smith was paid on an incentive basis depending on his weekly

Moreover, Smith, in my opinion, satisfied his evidentiary burden for a reasonable jury to find that the employer's explanation for firing him was pretext under the second and third prongs of the *Manzer* test.

Accordingly, I respectfully dissent.

discrimination, such statements are not categorically excluded. *See id*.

Finally, the majority writes that the evidence of racism Smith produced in this case should not have reached a jury because such evidence added an "emotional element" as a basis for the verdict. Being that this is a race discrimination case brought under Title VII of the Civil Rights Act and given that the crux of Smith's case depends upon the production of evidence showing that he was fired for racial reasons, it is inconceivable to me that the majority would argue that evidence of racism at the plant should have been excluded for its alleged "emotional" impact on the jury. The district court allowed such evidence to go to the jury because it was both critical and relevant to Smith's claims. Thus, in my view, the district court did not commit reversible error in admitting the evidence.

## III.

In sum, I believe that the district court did not err when it allowed evidence of racial remarks and conduct by supervisors and employees toward Smith and other African-American employees at Adcom to go to the jury. Under the "totality of the circumstances" approach set forth in *Harris*, the frequency and severity of the discriminatory behavior among supervisors and employees were indicative of the racially hostile work environment at Adcom over an extended period of time. On one occasion, Smith was shown a lewd and racist cartoon by his supervisor that depicted African-Americans in a humiliating light. On other occasions, Smith was called a "nigger" by a fellow white employee – an employee who merely received a verbal reprimand for the remark by Smith's supervisor – and was present while a racially offensive joke was being told by a supervisor. According to Smith and other fellow employees, the use of the "N" word was commonplace at the plant and Smith was often present when the term was used. Such remarks constitute more than "mere offensive utterances" and are indicative of the racially hostile atmosphere at Adcom.

productivity. Adcom considered Smith to be one of the most productive wire drawers in the plant.

In February 1994, Smith's incentive production numbers began to drop steadily for no apparent reason, resulting in decreases in his weekly paychecks. Smith complained to the plant superintendent, Chip Ford ("Ford"). Ford testified that he reviewed Smith's daily production totals and the raw data for his production, checked with the Quality Control Department, reviewed the lab reports on rejects for rejected wire, met with the plant accountant to make sure the calculations were correct, and reviewed the production numbers for other operators working on the same machines to determine if they were consistent. Ford informed Smith that he could not find anything amiss with the calculations.

Smith's production numbers continued to fall over the next month. Smith again complained to Ford, who testified that he could not find anything wrong. On March 16, 1994, Smith told his supervisor, Bobby Guy ("Guy"), that he was extremely upset about his incentive calculation. Shortly thereafter, Smith returned to Guy in a rage, and stated that unless his incentive pay was straightened out by the following morning, he, Smith, "was going to kill a bunch of M.F.s." Smith then left the Adcom plant, although he had not completed his shift.

Guy immediately reported the threat to Ford. Ford then reported the incident to the Plant Manager, Steve Riley ("Riley"). Riley discussed the matter with Ford and Bill Avise, the Vice President of Operations for the Leggett & Platt wire group, who happened to be visiting the Adcom facility. Ford then met with Guy in person. Ford stated that Guy looked scared, and that, at that point, Ford himself became scared. Ford met with Avise and Riley, and the three agreed that they would talk to Smith the next morning. They also called Nicholasville Police to let them know that an employee had made a threat, and asked that an officer be present the next morning.

The following morning, Smith returned to work as usual. Ford, Riley, and Avise met with Smith upon his arrival. According to Riley, when asked about the threat, all Smith would say was, "I might have said that." Riley felt that Smith was preoccupied with his incentive calculations. Riley suspended Smith and told him to return the following Monday. Smith left the plant without incident and without an escort. Riley called the police again and asked for a backup. On Monday, March 21, 1994, Adcom terminated Smith.

On September 11, 1995, Smith sued Leggett, Adcom, and L&P Acquisition Company-8 Inc. in federal court under the Kentucky Civil Right Act, Ky. Rev. St. §§ 344.040 *et. seq.,* on the basis of diversity jurisdiction. Smith alleged in pertinent part that he suffered unequal treatment while employed at Adcom and that he was terminated because of his race. He also asserted that Defendants engaged in a pattern or practice of discrimination.

Smith testified at trial that co-workers and supervisors regularly made racially discriminatory comments in his presence at work. Smith stated that on his first day of work in 1974, some employees threatened him, stating: "You're [sic] nigger ass ain't going to work here." Smith also testified that on one occasion in the late 1980's or early 1990's, Smith's supervisor Sammy Guy circulated a racially discriminatory and lewd cartoon around the plant. The cartoon depicted an African-American man with a rope around his neck and connected to his penis standing in front of a Caucasian woman. The cartoon was entitled "How a Black Man Commits Suicide." Sometime after 1993, Smith heard his supervisor, Bobby Guy, telling a "nigger" joke. Guy admitted using the term. Smith testified also that sometime in the 1990's he heard foreman Ronnie Curry referring to a black employee as a "gorilla." Smith stated that he complained to Curry. Smith also stated that he had "been to a supervisor once before and my foreman" to complain about use of the "N" word.

in fact, (2) the proffered reason did not actually motivate the termination, or (3) the proffered reason was not sufficient to motivate the discharge. *See Manzer v. Diamond Shamrock Chem.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

In this case, Smith does not dispute that he made the threatening remark under the first prong of the *Manzer* test or the fact that such a remark, under certain circumstances, would be a sufficient nondiscriminatory reason for firing someone under the third *Manzer* prong. However, under the third prong, there is a real dispute as to whether Smith's threat was directed toward any employee of the company or whether anyone at the plant took Smith's threat seriously. Moreover, there is no explanation as to why there was no direct law enforcement the day after the threat was made or why the employer waited until Monday to fire Smith. These are disputed issues, which in my opinion, are questions of fact for a jury, not the court, to decide.

Under the second prong of the *Manzer* test, Smith seeks to show that "the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is pretext." *Id.* at 1084. Smith produces evidence of racism and unequal treatment over a twenty year period to show that a racially hostile work environment existed at the plant. The district court allowed such evidence to go to a jury so that the jury could decide whether Smith was fired because of the threat or discriminatory reasons. The majority incorrectly dismisses this evidence on the grounds that none of the racial comments were made by the persons who terminated Smith and most of the comments were made long before Smith's termination. Again, it is important to reiterate this Court's language in *Ercegovich* that evidence of a corporate state of mind or discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or time-frame involved in the specific events that generated a claim of discriminatory treatment. *Ercegovich*, at 354-55. Thus, although discriminatory statements by a non-decision maker, standing alone, generally do not support an inference of

racially hostile from plaintiff's subjective point of view. The district court found that evidence of racial slurs and the offensive cartoon coupled with a lack of an effective disciplinary response to each incident over the years constituted a sufficient basis on which a reasonable jury could find that Smith was subjected to a racially hostile work environment. This finding was not unreasonable given the standard of review in this case, which states that a post-verdict motion for judgment as a matter of law should not be granted unless there is a "complete absence of proof on a material issue in the action." *See Morales v. American Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir. 1998). By reversing the lower court's decision and granting Adcom its post-verdict motion for judgment as a matter of law, this Court fails to draw "all reasonable favorable inferences in favor of the nonmovant. *See id.* Accordingly, I disagree with the majority's decision to grant judgment to the defendant in this case on the basis that Smith did not provide sufficient evidence under the "totality of the circumstances." I think the test is for a jury to find that his termination was racially motivated. I would at least give him a new trial.

## II.

The majority also holds that Smith's remark in the presence of Bobby Guy that he "was going to kill a bunch of M--F---ers", which he does not deny making, constituted a threat against the company and a legitimate nondiscriminatory reason for firing him. The majority concludes that because Smith failed to prove that his threat did not actually motivate his discharge or was pretext, he was not entitled to a decision in his favor on Adcom's post-verdict motion for judgment as a matter of law.

Pretext is established by evidence showing that the legitimate reason claimed by the defendant for a particular action is not the true reason, but instead is a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 50 U.S. 502, 515 (1993). The plaintiff may demonstrate pretext by showing that (1) the defendant's proffered reason had no basis

Smith testified that he inquired about promotion and was told that he needed a high school diploma. He later learned that several of the white supervisors did not have high school diplomas. Smith signed up to be promoted in 1990. However, in 1993, Bobby Guy, who is white, received the position even though he had never run a wire drawing machine or set one up. Smith testified that in his twenty years with Adcom, the company never had a black supervisor. Furthermore, Smith offered evidence that Adcom never employed more than four or five blacks at one time, and that between 1992 and 1994, the numbers of black employees was reduced by half through involuntary terminations. Smith also presented statistics showing that between the years 1989 through 1995, there were no black supervisors at the Leitchfield plant, the Adcom plant, or the Winchester plant. Smith further testified that he thought that he was discharged because for years he had complained about the lack of black supervisors.

Smith also asked the jury to infer discriminatory purpose because other white employees received less severe discipline for offenses similar to Smith's. Employee Willie Reed brought a gun to the plant, but was not terminated. On August 8, 1992, Employee Cecil Hopper, threatened a supervisor with bodily harm, but received only a written warning despite a disciplinary record. On February 1, 1994, employee Jeff Banta heated up a pair of pliers and touched them against a coworker's neck, yet he received only a verbal warning.

Defendants maintained that Smith's threat, not his race, was the reason for his termination. Riley testified that he was concerned about the threat because he knew Smith had guns. As plant manager, Riley stated that he felt an obligation to ensure the safety of all plant employees.

The district court granted judgment as a matter of law to Defendants on Smith's failure to promote claim and pattern or practice discrimination claim. The jury found that Adcom fired Smith on the basis of race and awarded him $100,000 in

damages. Defendants then moved pursuant to Fed. R. Civ. P. 50(b) for a post-verdict judgment as a matter of law or, in the alternative, for a new trial. The district court denied the motion. The court then awarded Smith $135,547.48 in attorney's fees and $2,347.19 in costs and entered a final judgment.

## II.

Defendants argue that the evidence failed to establish that Smith was terminated because of his race. Specifically, Defendants contend Smith did not prove that the proffered reason for Smith's termination – his threat to kill coworkers – was pretext for racial discrimination.

We review a district court's denial of Defendants' Rule 50(b) motion *de novo*. *See K&T Enterpr., Inc., v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996). Kentucky law governs the standard of review in this case. *See Morales v. American Honda Motor Co.,* 151 F.3d 500, 506 (6th Cir. 1998) (holding that in diversity cases, a state-law standard of review applies when a Rule 50(b) motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence). Under Kentucky law, a post-verdict motion for judgment as a matter of law should be granted only if "there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ." *Washington v. Goodman*, 830 S.W.2d 398, 400 (Ky. Ct. App. 1992); *see also Morales*, 151 F.3d at 506 (quoting *Washington*). All reasonable favorable inferences should be drawn in favor of the nonmovant. *See Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 125 (Ky. 1991); *see also Morales*, 151 F.3d at 506 (quoting *Baylis*).

Because Ky. Rev. St. Chapter 344 mirrors Title VII of the Civil Rights Act of 1964 ("Title VII"), we use the federal standards for evaluating race discrimination claims. *See Kentucky Commission on Human Rights v. Kentucky*, 586 S.W.d 270, 271 (Ky. Ct. App. 1979); *see also Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Title VII makes unlawful an employer's decision "to discharge any

over a twenty year period, no reasonable employee could subjectively view the atmosphere at the plant as racially hostile or abusive. I disagree on the basis of this Court's reasoning in *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 354-55 (6th Cir. 1998), whereby we said that evidence of a corporate state of mind or discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular "time-frame involved in the specific events that generated a claim of discriminatory treatment." Discriminatory statements may reflect a cumulative managerial attitude among the defendant-employers' supervisors that has influenced the decision-making process for a considerable period of time. *See id.*

In addition, the majority seems to be establishing that unless racially motivated misconduct is aimed at the plaintiff directly, simply seeing or overhearing it targeted at another is not sufficient to label the misconduct as "severe." We have held that evidence of racist remarks or isolated incidences of racial conduct directed towards other African-American employees at the plant may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive. *See Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998). An employer may create a hostile environment for an employee even where it directs its discriminatory acts or practices at the protected group of which the plaintiff is a member, and not just at the plaintiff himself. *See Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir. 1999). Thus, the fact that Smith was not the targeted victim of a racial remark made by a supervisor does not mean that such a remark was not offensive or humiliating to Smith. The jury was entitled to factor such remarks into their decision.

I believe that the Supreme Court did not intend for us to interpret the "totality of the circumstances" test so narrowly by disaggregating the effect of each incident over time until its significance is lost or diluted. Instead, we should look more at the cumulative effect of these incidents over time in order to assess whether the atmosphere at the plant was

whether a work environment is objectively hostile or abusive is not a "mathematically precise test." *Id*.

In this case, the majority finds that the circulation of a racially discriminatory and lewd cartoon by a supervisor around the plant, the use of the "N" word and other racially demeaning terms by fellow employees and supervisors in the presence of Smith on more than one occasion, and disparate treatment concerning disciplinary measures imposed on other white employees at the plant for comparable offenses were not "severe or pervasive enough" to create a genuine issue of material fact as to whether an objectively hostile work environment existed at the plant. In reaching this conclusion, the majority fails to recognize this Court's decision in *Williams v. General Motors Corp*, 187 F.3d 553 (6th Cir. 1999). In *Williams*, we reversed the district court's grant of summary judgment in favor of the defendant. The plaintiff alleged multiple acts creating a hostile work environment: foul language, sexual comments directed at plaintiff, at least one incident of physical contact, perceived inequities of treatment, and pranks or annoying conduct by co-workers. *See id*. at 559, 562. We held the district court erred in its dismissal of these incidents as "'infrequent, not severe, not threatening or humiliating, but merely offensive.'" *Id*. at 563. We found the district court failed to consider the totality of the circumstances and thereby "robbed the incidents of their cumulative effect." *Id*. at 561.

Similar to our holding in *Williams*, the majority's opinion in this case robs the incidents of racism presented by Smith of their cumulative effect. All that Smith is required to show is that the conduct in question was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that he subjectively regarded that environment as abusive. This is a subjective, not an objective, test. Smith had worked at the plant for nearly twenty years. Over the years, he was exposed to a number of racially motivated acts and remarks. Some of the misconduct was directed at him, and some was not. The majority concludes that because each instance of racism was spread out

individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin[.]" 42 U.S.C. § 2000e-2(a)(1) (1994).

Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to rebut the presumption of discrimination by providing evidence showing that the plaintiff was terminated for a legitimate nondiscriminatory reason. *See Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1092 (6th Cir. 1994). The plaintiff may demonstrate that the defendant's explanation was merely pretext by showing (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the termination, or (3) that the proffered reason was not sufficient to motivate the discharge. *See id*. at 1084. *See generally, Reeves v. Sanderson Plumbing Prods., Inc.*, ____ S.Ct. ____ No. 99-536, 2000 WL 743663 (U.S. June 12, 2000) (holding that a plaintiff's prima facia case, combined with sufficient evidence to find that the employer's asserted justification was false, may permit fact finder to conclude that the employer unlawfully discriminated).

## A.

Smith's death threat constituted a legitimate nondiscriminatory reason for firing him. *See, e.g., Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132-33 (7th Cir. 1994) (holding that employee's threat to kill two coworkers provided sufficient basis for discharge); *Payton v. Runyon*, 990 F. Supp. 622, 629 (S.D. Ind. 1997) (holding that employer proffered legitimate nondiscriminatory reason for terminating employee, that he made death threats against his supervisor); *Smith v. New York Times*, 955 F. Supp. 558, 560 (D. S. C. 1996) (holding that plaintiff's threat to kill supervisor was legitimate nondiscriminatory reason for his discharge), *aff'd*, 107 F.3d 867 (4th Cir. 1997). Smith does not deny making the threatening statement. Furthermore, it was undisputed that Guy believed Smith was irrational and

out of control, and that he communicated this feeling to his supervisor, Ford. Because Smith has not proven that the threat was "factually false," he has not established pretext under the first *Manzer* prong. *See Manzer*, 29 F.3d at 1084.

### B.

To establish pretext under the second *Manzer* method, the plaintiff admits the factual basis underlying the discharge and acknowledges that such conduct *could* motivate the dismissal, but attacks the employer's explanation "by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant." *Manzer,* 29 F.3d at 1084. "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.*

### 1.

Smith attempted to prove that his threat did not actually motivate his discharge by offering proof of racial statements made by his coworkers. However, none of the racial comments were made by the persons who terminated Smith: Riley, Avise or Ford. "'[S]tatements by nondecisionmakers . . . [can not] suffice to satisfy the plaintiff's burden . . .' of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161-62 (6th Cir.1990) (holding that statements of intermediate level management officials were not indicative of discrimination when the ultimate decision to discharge is made by an upper-level official); *Wilson v. Stroh Cos., Inc.,* 952 F.2d 942, 945- 46 (6th Cir. 1992) (holding that racial animus by plant manager could not be imputed to upper-level manager who made decision to terminate absent proof of a connection)*; cf. Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1249 (6th Cir. 1995) (holding that repeated racial slurs by two owners constituted direct evidence that the plaintiff's termination might have been racially motivated).

------------

### DISSENT

------------

BOYCE F. MARTIN, JR., Chief Judge, dissenting. We have here the question of whether Smith provided sufficient evidence to support the jury's finding that a racially hostile work environment was present at the plant and that race was a substantially motivating factor in Adcom's decision to terminate Smith. The majority holds that such evidence of racism, if examined under the Supreme Court's "totality of the circumstances" test established in *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993), was not sufficient to overcome Adcom's post-verdict motion for judgement as a matter of law. In addition, the majority concludes that Smith's statement that "he was going to kill a bunch of M--F---ers" constituted a legitimate nondiscriminatory reason for firing him, and that Smith failed to establish that this reason was pretextual. I must respectfully dissent.

### I.

In *Harris*, the Supreme Court held that courts reviewing a hostile work environment claim should consider "all of the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." According to the Court, "the conduct in question must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Id.* at 21-22. Moreover, the plaintiff must also prove that his employer "tolerated or condoned the situation" or knew or should have known of the alleged conduct and did nothing to correct the situation. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999). The Supreme Court in *Harris* acknowledged that determining

## III.

Given this outcome, Defendants' remaining claims regarding attorney's fees and corporate interrelationship are moot.

## IV.

For the foregoing reasons, the district court's judgment in favor of Smith is **REVERSED,** and judgment as a matter of law is entered for Defendants.

Further, the stray comments were made long before Smith's termination. *See Phelps v. Yale Security, Inc.*, 986 F.2d 1020, 1025-26 (6th Cir. 1990); *see also Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995) (holding that threat to shove a shotgun up the plaintiff's "black ass" made fifteen years prior to termination decision was "too tenuously related to the alleged discriminatory action by supervisors many years later" to create an inference of discrimination). Thus, the stray remarks were not relevant. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998) ("In assessing the relevancy of a discriminatory remark, we look first at the identity of the speaker. An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of . . . discrimination."); *cf. Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) (holding that evidence showing that coemployees circulated a fake employment application incorporating racial stereotypes was relevant where the plaintiff showed that upper management knew of the application, but did not condemn it).

Nor can we say that the error was harmless. The derogatory and graphic racial comments in this case are the "smoking gun" type evidence that added an "emotional element" as a basis for a verdict. *See Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (age-related comments by nondecisionmakers was not relevant, "embellished the circumstantial evidence directed to that issue by adding 'smoking gun' type evidence," and "offered an emotional element that was otherwise lacking as a basis for a verdict" for the plaintiff). The district court committed reversible error in admitting the evidence. *See id.* 851 F.2d at 157 (holding that district court committed clear error in admitting "too old" statements, warranting reversal).

### 2.

Smith also claims that the discriminatory remarks, viewed collectively, establish that Defendants tolerated a racially

hostile atmosphere.[1]  In order to establish a racially hostile work environment under Title VII, the plaintiff must show that the conduct in question was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive,  and that the victim subjectively regarded it as abusive.  *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658-59 (6th Cir. 1999); *see also Burnett v. Tyco Corp.*, -- F.3d --, No. 98-6477, 2000 WL 145825, at *3  (6th Cir. Feb. 11, 2000).   The plaintiff must also prove that his employer "tolerated or condoned the situation," or knew or should have known of the alleged conduct and did nothing to correct the situation.  *See Jackson*, 191 F.3d at 659.

Smith's evidence  – a racial slur in 1974 by an unknown coworker, a racially offensive and obscene cartoon passed around in the late 1980's  or early 1990's  by one who was not involved in Smith's termination decision, Bobby Guy's racist joke sometime after 1993, and supervisor Ronnie Curry's reference to a black employee as a "gorilla" – is simply not "severe or pervasive enough" to create an objectively hostile work environment.  Racial animus cannot be inferred from a handful of discriminatory comments by low-level employees, most of which were not directed at Smith, over a twenty-year span of time.  *See Burnett*, 2000 WL 145825, at *5 (holding that the occurrence of three sexually offensive remarks by the plaintiff's personnel manager spread out at the beginning and at the end of a six-month period were not commonplace, ongoing, or continuing and therefore not pervasive discriminatory conduct); *Black  v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997) (reversing a jury verdict although the plaintiff alleged various discriminatory comments  made  consistently  over  a  four-month  period, because viewed under the totality of the circumstances the

---

[1]The district court granted judgment as a matter of law on Smith's pattern or practice discrimination claim.  Smith does not challenge that ruling on appeal.  Rather, on appeal he argues that the alleged racially hostile atmosphere is proper circumstantial evidence that the proffered reason did not actually motivate his discharge.  We therefore evaluate this evidence under the second *Manzer* prong.

other Adcom employees; it was discovered by a cleaning person.  Lutz gave the handgun to Reed's wife (who also worked at the plant) and told her to tell Reed not to bring it back  again.      Lutz  testified  that  because  no  one  was threatened at the plant, he decided to keep the matter "low key" and not report it to the corporate office.  Hopper invited his  supervisor,  Bill  Grimes,  to  meet  him  off  property, presumably to fight.  Lutz decided to give Hopper merely a verbal warning because he felt, "under the circumstances, he didn't  do  any  damage."   Although  Banta  stuck  a  pair  of heated pliers on a coworkers neck, Ford gave merely a verbal warning  because  the  employees  were  "horseplaying,"  and Ford  felt  that  Banta  "didn't  intentionally  mean  to  hurt someone."

In short, neither Reed, Hopper or Banta threatened random, plant-wide violence.  Furthermore, it is inappropriate for the judiciary to substitute its judgment for that of management. *See Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995) (holding that court cannot sit as a "super-personnel department"); *Elrod v. Sears, Roebuck & Co.*, 939 F.3d 1466, 1470 (11th Cir. 1991) (same); *see also Manzer*, 29 F.3d at 1085  (holding  that  "'just-cause'  arguments  must  not  be allowed  to  creep  into  an  employment  discrimination lawsuit").      Smith  failed  to  show  that  he  was  treated differently than similarly-situated, non-minority employees. The district court erred in admitting this evidence.

In  sum,  there  was  insufficient  evidence  to  find  that Defendants proffered reason for firing Smith was pretextual. Given the "complete absence of proof" on the material issue of racial animus in this case, the district court should have granted Defendants' motion for judgment as a matter of law. Furthermore,  because  the  remaining,  properly  admitted evidence is insufficient to shoulder Smith's burden of proof, we now direct an entry of judgment as a matter of law for Defendants.  *See Weisgram v. Marley Co.,*, – U.S. – , 68 U.S.L.W. 4122, 2000 WL 196662, at *8 (February 22, 2000).

employer's treatment of them for it." *Ercegovich,* 154 F.3d at 352 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).  Exact correlation is not required, however. *See id.*  Rather, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'" *Ercegovich*, 154 F.3d at 352 (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)); *see also Harrison v. Metro Government*, 80 F.3d 1107, 1115 (6th Cir. 1996) (noting that "precise equivalence in culpability between employees" is not required when comparing similarly situated, non-minority employees).

As evidence of disparate treatment, Smith attempted to compare himself to coworkers Reed, Hopper, and Banta.  The comparisons are inapt however, because Smith was disciplined by a different decisionmaker and engaged in different conduct than Reed, Hopper and Banta.  *See Ercegovich*, 154 F.3d at 352; *Mitchell*, 964 F.3d at 583.

Reed, Banta and Hopper were not "similarly situated" as a matter of law.  Riley, who made the decision to fire Smith, did not determine their discipline.  Ralph Lutz, who was plant manager for a time, disciplined Reed and Hopper.  Although Riley signed Hopper's disciplinary form, it was undisputed that Riley referred the matter to Lutz, and that Lutz determined the punishment.  Lutz was not even employed at Adcom when Riley terminated Smith.  Ford, not Riley, made the decision to give Banta a verbal warning.

Smith's conduct is also dissimilar to Reed's, Hopper's, and Banta's.  Riley testified that he terminated Smith because of his threat to "blow away some MFers" if his incentive pay was not increased.  Riley testified that as plant manager, he was concerned about plant safety.  This is clearly a "mitigating circumstance" that prevents any comparison with Reed's, Hopper's, and Banta's significantly less threatening conduct, as determined by Defendants.  Reed brought a handgun to work to protect himself against threats from a former Adcom employee.  Reed did not show the gun to any

comments were merely offensive, and most were not directed at the plaintiff).  *Cf. Jackson*, 191 F.3d at 658 (finding a racially hostile work environment where plaintiff established persistent racial slurs and graffiti as "conventional conditions on the factory floor"); *Williams v. General Motor Corp*, 187 F.3d 553,  562-66 (6th Cir. 1999) (holding that fifteen separate allegations of persistent foul language and sexually explicit comments directed at the plaintiff, three of which involved an "element of physical invasion," offensive comments towards women in general, denial of the plaintiff's overtime, viewed collectively, created issue of fact that the plaintiff was subject to a sexually hostile work environment); *Abeita v. Transamerica Mailings,* 159 F.3d 246, 252 (6th Cir. 1998) (holding that the plaintiff's allegations of sexually offensive statements that were commonplace and ongoing over a period of seven years, coupled with daily statements by the president of the company, with whom the plaintiff worked closely, about his sexual interest in female employees and models, created fact question of sexually hostile work environment);  *Ercegovich*, 154 F.3d at 356 (holding that isolated comment by senior official "evidencing managerial policy," when coupled with numerous discriminatory comments by individuals occupying high positions might "reflect a cumulative managerial attitude among the defendant-employer's managers that has influenced the decisionmaking process for a considerable time").

Nor is there any proof, direct or indirect, that Defendants "tolerated or condoned" the racial harassment.  *See Jackson*, 191 F.3d at 659.  With one exception, it was undisputed that Riley, Ford, and Avise were not aware of the alleged incidents.  Smith testified simply that he complained to a supervisor about a racial comment only once.  Riley testified, without contradiction, that after Smith spoke to him, Riley warned the employee that he would be disciplined, possibly terminated for any further racial comments.  Smith's vague assertion that there was a general attitude of discrimination at Adcom is insufficient to establish pretext.  *See Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 171 (6th Cir. 1996) (holding that the plaintiffs failed to create issue of fact by

alleging numerous instances of disparate treatment and hostile work environment in conclusory terms with no reference to names, times, occasions). Thus, absent proof that Defendants condoned severe or pervasive racial harassment, Smith failed to show discrimination based on a racially hostile work environment. *Cf. Ercegovich*, 154 F.3d at 356 (holding that numerous age-related statements by management reflected a corporate mindset or discriminatory atmosphere).

**3.**

Over Defendants' objections, Smith also introduced statistics relating to the percentage of minority supervisors at Adcom and at Leggett's other Kentucky facilities in Leitchfield, Simpsonville, and Winchester to show pretext under the second *Manzer* prong. Admission of this evidence was likewise erroneous, and not harmless. First, Smith's statistics were not admissible because he did not establish the number of qualified minorities available in each labor market. *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 650 (1989); *Gibson v. Frank*, 946 F.2d 1229, 1233 (6th Cir. 1991) (holding that the plaintiff failed to show discrimination because he did not demonstrate the proportion of blacks qualified for the position); *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 943 (6th Cir. 1987) (employee statistics unaccompanied by evidence regarding qualified potential from the relevant "employee statistics unaccompanied by evidence regarding qualified potential applicants from the relevant labor market" lack probative value). Furthermore, the statistics relating to the percentage of minority supervisors at Adcom and other Leggett & Platt facilities were not relevant to the issue of whether Adcom terminated Smith because of his race. *See Kier v. Commercial Union Ins. Cos.*, 808 F.2d 1254, 1258 (7th Cir. 1987) (holding that statistical evidence relating to the employer's hiring practices is irrelevant in discriminatory discharge case); *Box v. A&P Tea Co.*, 772 F.2d 1372, 1379-80 (7th Cir. 1985) (statistics showing that the employer favored men in promotions had little relevance to claim that the employer discriminated because of sex in discipline). Smith's statistics lacked

probative value and could not support a jury verdict on the ultimate question of discrimination.

**4.**

Smith also contends that the jury could have inferred racial animus from Defendants' purported lack of fear to Smith's threat. We note that both Guy and Ford testified that they were afraid of Smith after he made the threat. In any event, the issue before us is not whether Defendants exercised good judgment in firing Smith, but merely whether they did so because of an illicit motive. *See Manzer*, 29 F.3d at 1085. Absent some evidence of racial discrimination, Smith failed to meet his burden.

Smith's suggestion that Adcom's failure to promote him to the position of production supervisor is also insufficient to carry his burden. First, the district court granted judgment as a matter of law as to Smith's failure to promote claim. Further, the jury could not reasonably conclude that Smith was fired based upon the fact that Smith was not promoted to the position of facilitator five years earlier. Finally, the allegedly false statement concerning the need for a high school diploma was not relevant because it was made nine years before Smith's termination.

**C.**

Smith also tried to establish pretext under the third *Manzer* prong by demonstrating that he was treated differently than similarly situated employees. This type of evidence "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084. To be similarly situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the