**James C. DEETJEN, Plaintiff–Appellant,**

v.

**ANCHOR COUPLING, INC., Defendant–Appellee.**

**No. 03–1086.**

United States Court of Appeals, Sixth Circuit.

June 3, 2004.

Nino E. Green, Green, Renner, Weisse, Rettig, Rademacher & Clark, Escanaba, MI, for Plaintiff–Appellant.

Robert E. Schreiber, Jr., Linder & Marsack, Milwaukee, WI, for Defendant–Appellee.

Before: BOGGS, Chief Judge; KENNEDY, Circuit Judge; and RUSSELL, District Judge.*

---

* The Honorable Thomas B. Russell, United States District Judge from the Western District of Kentucky, sitting by designation.

PER CURIAM.

Appellant James Deetjen appeals the grant of summary judgment to Anchor Coupling Inc., alleging that he was fired because of his age. Anchor contends that Deetjen was let go when a new computer system became operational, thereby eliminating Deetjen's job. We are not convinced that Deetjen has demonstrated a *prima facie* case of age discrimination and do not find any pretext in Anchor's reason for firing Deetjen. Therefore, we affirm the grant of summary judgment by the district court.

In 1951, James Deetjen began working for Anchor Coupling, Inc., which constructs industrial hose and coupling assemblies for a wide range of industrial applications. Deetjen's job was to calculate the price of each specific assembly by looking up the price of its component parts in a series of bound volumes and then figuring the total cost. He also did "print verification:" double-checking that Anchor's design of each assembly was sound. In 1996, Anchor decided to computerize its price quotation system and transferred James Dufrane from the customer service department to the quotation department with the mandate to automate the system. Dufrane's other main responsibility was "print reading," namely determining which components would be needed for a hose or coupling system so that it would meet the customer's requirements. Deetjen. then 69 years old, thought that Anchor wanted to assign his duties to Dufrane, then 33, and filed a complaint with the EEOC. Deetjen voluntarily withdrew his claim when Anchor's head of human resources assured him that his job was secure.

In 1998, Dufrane completed the Anchor Pricing System (APS), a database of pricing information. In 1999, Anchor purchased a software upgrade (MAPICS) that included an "Estimating and Quote Management" (EQM) module that could generate price quotes when used in conjunction with Anchor's in-house computer system. In March 1999, Deetjen received a "fully effective" performance evaluation, in which his supervisor noted that Deetjen was receptive to the "new training opportunities" that he would be offered so that he could learn the new computer system. Starting in April. Deetjen attended meetings with the vendor, who described the new system and how the price quote feature would function: he disputes that these meetings constituted training but acknowledges that he was told how the system would work. In October 1999, the MAPICS upgrade became operational and on Monday. November 22, 1999, it was linked with the APS. thereby enabling Anchor to generate price quotes by computer when a parts list was entered.

On Friday, November 19, 1999 at 4:20 in the afternoon. Deetjen was fired, effective at 4:30 p.m. that day. Mike Warnken. Anchor's general manager, was responsible for the decision. Anchor did not hire another quote analyst, and Dufrane is currently the only employee in the quote department. Starting in June 2000. Patricia Sievert, an accountant, became responsible for data entry into the EQM module and other *ad hoc* duties as assigned by Dufrane.

Deetjen filed another complaint with the EEOC and subsequently filed suit against Anchor in Michigan state court, alleging a violation of the Elliott–Larsen Civil Rights Act. Mich. Comp. Laws. Ann. § 37.2202 (West 2001). Anchor removed the case to the United States District Court for the Western District of Michigan. The district court granted Anchor summary judgment, finding that Deetjen 1) had failed to meet the higher requirement for a *prima facie* case of discrimination in the context of a workforce reduction and 2) could not show

that Anchor's reason for firing him was pretextual. This appeal followed.

## II

■ Summary judgment is only appropriate when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The district court in granting summary judgment must construe the facts in the light most favorable to the non-moving party, in this case Deetjen. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This court reviews a district court's grant of summary judgment *de novo*. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.1988). Although Michigan substantive law governs this action. Michigan state courts often follow federal law when reviewing claims of age discrimination under the Elliott–Larsen Civil Rights Act. *Meagher v. Wayne State Univ.*, 222 Mich.App. 700, 565 N.W.2d 401, 410 (Mich. Ct.App.1997) (applying *McDonnell Douglas* framework to age discrimination case); *Brocklehurst v. PPG Indus.*, 123 F.3d 890, 894 (6th Cir.1997).

The parties dispute whether Deetjen meets the fourth requirement for a *prima facic* case of discrimination under the well-known *McDonnell Douglas* rubric. *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Deetjen fulfills the first three. He was 73 when he was fired and thus 1) is a member of a protected class and 2) suffered an adverse employment action. He received a "fully effective" job performance rating a few months before he was fired, meaning he was 3) qualified for the position. *Cicero v. Borg–Warner Auto., Inc.*, 280 F.3d 579, 584 (6th Cir.2002). Generally, the fourth part of the test requires a plaintiff to show that he was replaced by a younger worker, *ibid.*, but this last step is different when the alleged discrimination took place in the context of a workforce reduction.

A plaintiff challenging a termination that was part of a workforce reduction must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [him] out ... for discharge for impermissible reasons." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998). A workforce reduction occurs whenever an employer abolishes one or more specific jobs. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990) ("A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company."). An employer may eliminate a position, yet reassign a terminated employee's responsibilities to other workers, and still have a legitimate business reason for its action. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 372 (6th Cir.1999). If, however, the employer promotes another employee into the terminated worker's job, or "fundamentally changes" the job description of a remaining employee to include the duties of the person fired, then a question is raised as to whether the position was actually eliminated. *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 522 (6th Cir.1997).

The *prima facie* case turns on whether Dufrane replaced Deetjen or merely absorbed Deetjen's duties in addition to his own. The distinction is crucial: Deetjen can establish the fourth part of the *McDonnell Douglas* test if Dufrane replaced him because Dufrane is younger. If, however, Deetjen's position was eliminated, then he does not have a *prima facie* case because he cannot show that he was singled out because of his age, as required in a workforce reduction case.

Deetjen's termination letter stated that the new computer system "removes the

need for a Quote Analyst and therefore your position has been eliminated, effective today." Anchor argues that Deetjen's job was to look up the prices, listed in various manuals, of the components needed to make the specific piece of equipment that the customer wanted, and then add them together to get a price quote. It asserts that this task is now performed by the computer and so Deetjen's position is no longer necessary.

After Deetjen was fired, Dufrane, a quote manager, became the sole employee of the quote department. Deetjen concludes this supports his domino theory of job changes motivated by age discrimination: he was fired, Dufrane moved into his position, and Patricia Sievert moved into Dufrane's old job. Deetjen points out that Anchor's head of human resources admitted that the only aspects of Deetjen's job that were eliminated were "manual calculation of cost" and "use of a calculator to prepare price quotations." Dufrane must still retrieve the component parts by item number from the APS database, indicate how many of each are needed, and "pull the [data] over" to the pricing program, so that the computer can calculate the total charge. Deetjen therefore concludes that Dufrane is, in essence, doing Deetjen's job.

Deetjen admits that manually calculating the price of Anchor's hose assemblies took up 60–75% of his typical work week. Even keeping in mind the key stroke manipulation that would be necessary to generate a price quote, pulling the information from an electronic database would be considerably more efficient. Therefore, the computer undoubtedly reduced the quote analyst's work load to only a fraction of the previous level. Analyzing the situation in the light most favorable to Deetjen, the best one could argue is that there is a genuine issue as to whether the quote analyst job was completely eliminated or merely reduced to a small part of its previous workload. Ultimately, this would not help Deetjen because an employer can redistribute the former employee's remaining tasks among its other workers. *Godfredson*, 173 F.3d at 372. Even accepting Deetjen's allegation that his job was given to Dufrane, there was not enough of it left to constitute the kind of fundamental shift in job responsibility that is required to show that Dufrane replaced him.

### III

■ Even if we were to accept Deetjen's theory that Anchor reassigned Dufrane to his job, and thereby hold that he can make a *prima facie* case. Anchor need only produce a legitimate, nondiscriminatory reason for firing Deetjen. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir.2003) (en banc). The district court identified that reason as the reduction in force and correctly found that Deetjen's evidence of pretext is unpersuasive. In 1996, Deetjen's supervisor allegedly notified him that Dufrane would take over his responsibilities; in 1998, Deetjen's subsequent supervisor asked for assurances that he would not retire. These conflicting statements about his status with the company were made several years apart and well before his ultimate termination so that they are not indicative of age discrimination. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 760 (6th Cir.2000). Furthermore, neither statement can be linked to Anchor's general manager, who made the decision to fire Deetjen. *Id.* at 759 (citing cases for the rule that statements of non-decision makers cannot be used to show discrimination). Finally, Anchor's failure to give Deetjen any advance notice about the end of his employment, although unkind, cannot support an allegation of pretext. *Godfredson*, 173 F.3d at 374.

## IV

For the reasons explained above, we **AFFIRM** the district court's grant of summary judgment to Anchor.