GILMAN, Circuit Judge.
I concur in Part I of the majority opinion regarding Johnson’s and Goodwin’s disparate treatment claims. But I disagree with the majority’s conclusion in Part II that the district court erred in *459 granting judgment as a matter of law to UPS on Johnson’s and Goodwin’s claims of racial harassment.
Johnson cites seven occurrences to support his claim of racial harassment: (1) Todd’s alleged use of the word “nigger” in an unknown context, (2) Todd’s mimicking the way African-Americans speak, (3) Burtnett’s references to someone “hauling” Johnson around, (4) Burtnett’s admonishment of Johnson regarding “stealing time,” (5) the failure of the UPS management to respond to Johnson’s complaints, (6) Burt-nett’s request that Johnson remove his sunglasses, and (7) Burtnett’s request that Johnson not move his name on the work assignment board.
All of the allegedly offensive actions on Burtnett’s part are facially neutral from a racial viewpoint. Johnson has not demonstrated, for example, that he was asked to remove his sunglasses because of race. I therefore find it difficult to conclude, without additional evidence, that Burt-nett’s actions were motivated by racism. Conduct composed primarily of race-neutral disputes relating to discipline, work assignments, training, and other work-related issues does not rise to the level of an actionable hostile work environment. Cf. Bowman v. Shawnee State Univ., 220 F.3d 456 (6th Cir.2000) (holding that certain offensive acts could not be considered in the hostile-environment analysis because the plaintiff did not show that the harassment had an anti-male bias).
As for Todd’s actions, which were racially based, I find it equally hard to conclude that the conduct alleged was so “severe and pervasive” as to “unreasonably interfere[ ] with [Johnson’s] work performance.” Harris. v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). According to the Supreme Court, “simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.” Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal citations omitted).
The majority makes much of Todd’s isolated and unexplained use of the word “nigger” to a third party, but the cases it relies on to support the significance of this racial slur are readily distinguishable. In McGinest v. GTE Serv. Corp., 360 F.3d 1103 (9th Cir.2004), for example, the plaintiff was subjected to extreme verbal insults, racist graffiti, an inability to collect overtime pay, and his supervisor’s refusal to ensure that his vehicle received necessary maintenance, which ultimately resulted in a serious automobile accident. Likewise, in Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir.2001), the plaintiff was directly exposed to his supervisor’s highly offensive racist comments on a daily basis.
The totality of the alleged conduct here, while certainly unwelcome and offensive, occurred only a few times over a period spanning several years. Johnson has therefore failed to show that Todd’s purported actions were common or ongoing. This court has held that conduct far more severe and pervasive than that alleged by Johnson is not sufficient to create a hostile work environment. In Smith v. Leggett Wire Co., 220 F.3d 752 (6th Cir.2000), for example, the plaintiff testified that his coworkers and supervisors regularly made racially discriminatory comments and racially-motivated threats in his presence and circulated a crass cartoon captioned “How a Black Man Commits Suicide” around the plant. Yet this court reversed the jury’s verdict for the plaintiff, holding that the conduct was “simply not ‘severe or pervasive enough’ to create an objectively hostile work environment.” Id. at *460 760. If the conduct at issue in Smith did not rise to the level of racial harassment, then Todd’s actions here also fall short of this standard. Cf. Burnett v. Tyco Corp., 203 F.3d 980 (6th Cir.2000) (holding that three allegations of sexual harassment, although offensive, did not give rise to a genuine issue of material fact regarding whether the conduct was sufficiently pervasive to create a hostile work environment because they occurred over a six-month period of time).
As for Goodwin’s racial harassment claim, it is essentially an attempt to piggyback on Johnson’s claim. But Goodwin was not even aware of the incidents in question at the time they occurred. These incidents are therefore not relevant to his claim of racial harassment. Cf. Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 249 n. 4 (6th Cir.1998) (noting that testimony showing that a company president had made comments outside of the plaintiffs presence was irrelevant to the plaintiffs claims because she was unaware of the comments at the time).
Goodwin also complains that white employees were allowed to horse around, but that black employees were not, and that he was required to roll his sleeves down while white employees were not required to do so. These minor complaints, however, simply do not rise to the level of workplace harassment based on race as mandated by Harris v. Forklift Systems., Inc. 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (“When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment, Title VII is violated.”) (internal citations omitted).
Accordingly, I would AFFIRM the decision of the district court.