*386 CONCURRING IN PART AND DISSENTING IN PART
SUTTON, Circuit Judge,
concurring in part and dissenting in part.
I agree with the Court that The Rawl-ings Company did not interfere with Marshall’s FMLA leave and did not intentionally inflict emotional distress. Marshall received all of the FMLA leave she requested. And the company’s behavior did not surpass Kentucky’s high bar for bringing a claim for intentional infliction of emotional distress, which requires extreme and outrageous conduct.
I part ways with the Court on the proper resolution of the ADA discrimination and FMLA retaliation claims. Under our cases, the “honest belief’ rule provides an initial answer to these claims. See Ferrari v. Ford Motor Co., 826 F.3d 885, 895 (6th Cir. 2016). The two decisionmakers, Laura Plumley and George Rawlings, believed that Marshall should be demoted, and eventually fired, because she earned it — as an inefficient employee who falsely claimed harassment to distract from her poor work ethic. At the pretext stage of the McDonnell Douglas test, that’s all that’s needed to show that the plaintiffs claims fail as a matter of law. If this case turned solely on the application of the honest-belief rule, as I read the Court’s opinion, all three of us would agree that the employer should prevail.
The Court permits these claims to go to a jury on the ground that the “cat’s paw” theory overrides the honest-belief rule. I doubt we can sidestep the honest-belief rule so easily. But even if we could, the “cat’s paw” theory fails on its own terms here. Under the theory, a lower-level supervisor, motivated by actionable animus, commits actions or makes recommendations to convince the decisionmaker, oblivious to the discriminatory animus, to take an adverse employment action against the employee. See Staub v. Proctor Hosp., 562 U.S. 411, 418-19, 428, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011). The upshot is that the decisionmaker does the dirty work for a retaliating supervisor.
But the lower-level supervisors in our case, Jeff Bradshaw and Mike Eisner, were not “motivated by discriminatory animus” and “honestly believed” the nondiscriminatory reasons for the demotion and firing. Ferrari, 826 F.3d at 896 & n.5. Start with the evidence with respect to Bradshaw, who recommended Marshall’s demotion. After Plumley agreed to demote Marshall, Bradshaw conveyed that decision to Marshall. Bradshaw’s criticism of Marshall at the demotion meeting, as Marshall testified at her deposition, was that Marshall “do[es]n’t know what [she’s] doing, [she’s] completely inefficient. [She] come[s] in here long hours and [she] still can’t get [her] job done.” R. 37-1 at 27. That reflects an honest belief that Marshall worked too much to do too little, not that she was skipping too much work for her FMLA leave. And the lunch confrontation about office morale was over half a year after the demotion and had nothing to do with Marshall’s FMLA leave or mental health. The relevant law prohibits employers from retaliating. It does not obligate them to be polite and cheerful (even if that is the better course).
Bradshaw’s allegedly sarcastic question five months after Marshall had returned from her FMLA leave — “So are you planning on being out any time soon again?”— does not alter this conclusion. R. 34-5 at 19. Bradshaw and Marshall met to hammer out a timeline to complete work she could not seem to get done, and Marshall had used vacation and sick time recently. In context, Bradshaw’s question was just the sort of stray and ambiguous comment that is insufficient to prove discrimination, which is probably why she didn’t mention *387 it when she first alleged he had harassed her. See, e.g., Donald v. Sybra, Inc., 667 F.3d 757, 763-64 (6th Cir. 2012); Smith v. Leggett Wire Co., 220 F.3d 752, 760 (6th Cir. 2000); Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1025-26 (6th Cir. 1993).
Turn to the evidence with respect to Eisner. He also influenced the demotion decision, and he initiated the inquiry into Bradshaw’s alleged harassment, which led to George Rawlings’ decision to fire Marshall. On September 23, 2013, Eisner and another supervisor noticed that Marshall and a co-worker were not at their desks most of the day. The supervisors pulled the phone reports to confirm that Marshall and the co-worker hadn’t been working. When confronted, the co-worker apologized. But Marshall responded by alleging that Bradshaw had harassed her at the demotion meeting and lunch. Eisner reported the alleged harassment to Human Resources. Eisner, Plumley, and Marshall met to discuss the allegation. Plumley reassured Marshall by saying: “Gloria, you’re not going to get fired.” R. 37-1 at 36. But Plumley remained unconvinced by Marshall’s allegations and reported the investigation to George Rawlings, the owner of the company. Rawlings was the one who thought of firing Marshall, and he did so only after they met to discuss her harassment allegation. Nothing in this narrative suggests that Eisner had -a discriminatory animus toward Marshall. All the evidence points toward Eisner’s honest belief that the harassment allegation was a false excuse to deflect attention away from Marshall’s poor work ethic. Even if there could be a cat’s paw of a cat’s paw, that was assuredly not the role George Rawlings was playing when he suddenly decided to fire Marshall.
For these reasons, I would affirm Judge Russell’s thoughtful decision across the board. The Court seeing it otherwise on the FMLA retaliation and ADA discrimination claims, I respectfully dissent from those parts of its ruling.