**KENTUCKY COMMISSION ON HUMAN RIGHTS, H. Gene Baldridge, Ewing P. Benberry, Mrs. Betty Fleischaker, James E. Gayheart, Mrs. Brenda Harris, Floyd E. Hurley, Jr., Edmund P. Karem, Ricardo Sisney, Caldwell Smith, Sr., Dr. John Wallace, Mrs. Willis Weatherford, Individual Members of the Kentucky Commission on Human Rights, Galen Martin, Executive Director, Kentucky Commission on Human Rights, Marta Pearson, and Lupe Cota, Appellants,**

v.

**COMMONWEALTH of Kentucky, DEPARTMENT OF JUSTICE, BUREAU OF STATE POLICE, State Police Personnel Board, and Kenneth E. Brandenburgh, Commissioner, Bureau of State Police, Appellees.**

Court of Appeals of Kentucky.

March 23, 1979.

Rehearing Denied May 18, 1979.

Discretionary Review Denied Oct. 2, 1979.

Galen A. Martin, Thomas A. Ebendorf, Samuel H. DeShazer, Kentucky Commission on Human Rights, Louisville, for appellants.

James M. Baker, William G. Mullins, Bureau of State Police, Dept. of Justice, Frankfort, for appellees.

Before HOWARD, REYNOLDS and WINTERSHEIMER, JJ.

HOWARD, Judge.

This appeal involves the question of whether the minimum height requirement of 5′ 6″, a necessary qualification for employment as a Kentucky state trooper, is an unlawful practice of sex discrimination prohibited by KRS 344.040, the Kentucky Civil Rights Act.

Marta Pearson, a female, measures 5′ 5¼″ in height. Lupe Cota, a female, measures 5′ 5¾″ in height. Both women were otherwise qualified for employment as a state trooper, but were rejected because they did not meet the minimum height requirement. Each of the women filed a discrimination complaint with the Kentucky Commission on Human Rights (hereinafter referred to as the Commission).

After a hearing, the Commission determined that the Kentucky Bureau of State Police had discriminated against Pearson and Cota by using an employment restriction, which, while facially neutral, was discriminatory on the basis of sex and therefore violated KRS 344.040. An appeal was taken to the Franklin Circuit Court. The Franklin Circuit Court held that the Bureau of State Police established that the height requirement was job-related and reversed the Commission's finding that the requirement was discriminatory.

■ The Kentucky statute is virtually identical to the corresponding section of the U.S. Civil Rights Act of 1964, codified in 42 U.S.C. § 2000e–2(a). Therefore, United States Supreme Court decisions regarding the federal provision are most persuasive, if not controlling, in interpreting the Kentucky statute. *Kentucky Com'n v. Com., Dept. for Human Resources,* Ky.App., 564 S.W.2d 38 (1978).

■ There seems to be no dispute between the parties as to the three-part test used in determining whether a facially neutral requirement, such as this minimum height requirement, operates, in fact, to exclude women from employment opportunities and is therefore discriminatory. To establish a prima facie case of discrimination, a plaintiff need only show that the requirement in question disproportionately excludes a certain class of applicants from employment. Once it is shown that the requirement is discriminatory in effect, the employer must meet "the burden of showing that any given requirement [has] . . a manifest relationship to the employment in question." *Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). If the employer can prove the requirements are job-related, the

plaintiff must show that there are other selection devices, without a similar discriminatory effect, which would likewise "serve the employer's legitimate interest in 'efficient and trustworthy workmanship.'" *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975) quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

These cases were subsequently referred to by the Supreme Court in *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). One of the issues in *Dothard, supra*, concerned an Alabama statute which established minimum height (5' 2") and weight (120 pounds) requirements for employment as a correctional officer (prison guard). Diane Rawlinson was refused employment as a correctional officer because she failed to meet these minimum requirements.

In *Dothard, supra*, statistics were introduced showing that women, 14 years of age or older, comprise 52.75% of the population of Alabama and 36.89% of the total labor force. Only 12.9% of Alabama correctional counselors are women. The Alabama height requirement would exclude 33.29% of women in the United States between the ages of 18–79, while only excluding 1.28% of men between the same ages. The weight requirement would exclude 22.29% of women and 2.35% of men in that age group. In combination, the two requirements would exclude 41.13% of women, while excluding less than 1% of men. The Supreme Court held that the District Court did not err in finding that Rawlinson had made a prima facie showing of discrimination of the height and weight requirements on the basis of these statistics, although the Supreme Court noted that the percentage of excluded males could properly have been found to be as high as 3.63%.

The Supreme Court then discussed whether the employer had rebutted the prima facie case of discrimination by showing that the requirements were job-related. In *Dothard, supra*, the employer argued that the height and weight requirements have a relationship to strength, an attribute essential to effective job performance as a prison guard. The employer produced no evidence correlating the requirements to the requisite amount of strength needed to perform the job. The Supreme Court held that the height and weight requirements were discriminatory since the employer produced no evidence to justify the requirements.

We turn now to the proof presented in the instant case. The height requirement for employment as a state trooper is 5' 6"; there is a proportional weight requirement based on height. Applicants must also be licensed drivers and between the ages of 21 and 30. Comparisons of licensed drivers in Kentucky between the ages of 21 and 30 established that 70% of women would be excluded by the height requirement whereas only 5% of men would be excluded. Certain other data indicated that 91.9% of young adult women are less than or equal to 5' 6" in height, whereas only 28.6% of young adult men are less than or equal to that height. It was also shown that one (1) out of every three (3) women who applied for employment as a state trooper was rejected because of failure to meet the height requirement, whereas one (1) out of every one hundred thirty-three (133) men were rejected for that reason. There is one woman employed as a Kentucky state trooper at the present time.

Although the Bureau of State Police questioned the validity of the statistics in the Franklin Circuit Court, these statistics are not questioned on this appeal. In view of these statistics, it can be seen that this height requirement disproportionately excludes women as applicants. A prima facie showing of discrimination has been proven. *Griggs v. Duke Power Co., supra; Dothard v. Rawlinson, supra.*

The next question to be resolved is whether the Bureau of State Police established that the height requirement was job-related. A brief summary of the proof presented on this issue is warranted.

Peter Bloch, the expert who testified for Pearson and Cota, stated that there is no validated study which shows a relationship

between height and performance by a police officer. The expert witness for the Bureau of State Police, Dr. James W. Fox, likewise testified that there was no empirical evidence of a relationship between height and performance.

Pearson and Cota presented the testimony of several female law enforcement officers, all under 5' 6" in height, who stated that they were able to perform their law enforcement duties in an effective manner. These female officers are city police officers. The Bureau of State Police established the differences which exist between the job of a state trooper as compared to that of a city police officer, being the availability of back-up officers, the availability of fire and emergency medical services, the distances patrolled, etc.

The witnesses for the Bureau of State Police were police officers, the past Commissioner of the Bureau of State Police and the present Commissioner. Their testimony focused on the physical aspects of a state trooper's job. They all agreed that height is a significant factor in the effective performance of that job. The witnesses pointed out the physical advantages of height in such normal police situations as effectuating an arrest and in crowd or traffic control. The witnesses also stressed the psychological advantages which a taller officer has in confrontations with potential arrestees. There was testimony that the citizens of this Commonwealth entertain a certain image of the ideal state trooper, being a "big, tall man."

The Commission found that there was no scientifically valid study which established any relationship between the height of a state trooper and performance. The Commission found that the evidence presented by the Bureau of State Police was opinion testimony, unsupported by factual or objective evidence.

On the other hand, the Franklin Circuit Court found from the evidence that size was an important aspect and "that appearance of a state trooper is an integral attribute which is necessary to the proper function of a state trooper." The Franklin Circuit Court quoted from the concurring opinion in *Dothard v. Rawlinson, supra,* wherein it was stated that appearance could be argued as a job-related qualification.

Pearson and Cota argue that the evidence presented by the Bureau of State Police does not show that the 5' 6" height requirement is necessary to safe and efficient job performance, but rather that the 5' 6" requirement is simply a preference. They state that the Bureau is relying on needed physical skills for effective job performance which are unrelated to height. Pearson and Cota point out alternatives to a height requirement, if physical ability is a necessary attribute. One of these alternatives is an agility test. They also point to the cadet training program, which prospective troopers are required to complete and which would operate to exclude applicants who are not suited for employment as a state trooper.

There must clearly be some direct relationship between the height requirement in question and performance of a state trooper's job. *Albemarle Paper Co. v. Moody, supra; Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

In the instant case, there has been no validated study either proving that a certain height is a necessity for effective performance as a state trooper nor disproving that persons below a certain height cannot perform effectively. However, the question of job relatedness must also be viewed in the context of the duties and functions a state trooper must perform.

State troopers patrol a wide area and ride in single-patrol units. State troopers are confronted with different situations than those city police officers are faced with. The question of how much assistance state troopers can rely on in emergency situations and the time factor for such assistance to arrive cannot be overlooked.

The Bureau of State Police has made a sufficient showing that the physical characteristics of size and appearance are necessary qualifications for safe and efficient performance by a state trooper. The

height requirement is, therefore, not discriminatory. Although there may be alternatives to determining physical strength, there is only one method of determining size, if size is deemed to be job-related. That method is simply to measure the applicant.

■ The showing made by the Bureau of State Police was ignored by the Commission as being of no probative weight or value. The trial court, on the other hand, did consider this evidence and gave it considerable weight and value. There is ample authority for the trial court to consider such evidence. In the case of *Smith v. Troyan,* 520 F.2d 492 (6th Cir. 1975), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385, *reh. denied,* 429 U.S. 933, 97 S.Ct. 341, 50 L.Ed.2d 303, the Sixth Circuit Court of Appeals upheld a 5′ 8″ height requirement for police officers in the City of East Cleveland, Ohio. The Court's decision turned on the testimony of three East Cleveland police officials who testified uncontradictedly and adamantly to the need for a height requirement. The testimony involved the psychological advantage of taller officers and the advantage of height in effecting arrests and emergency aid.

■ We do not think that the standard of review set out in KRS 344.240(2) prohibited the court from considering this type of evidence. Whether or not evidence is of probative value is a legal question and the Legislature cannot impair judicial review of legal questions. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission, et al.,* Ky., 379 S.W.2d 450 (1964).

Furthermore, the trial court was in as good a position as the Commission in determining the sufficiency of the evidence of the Bureau of State Police. This is not a question involving the overturning of findings of disputed facts. CR 52.01. Rather, it was a legal question regarding the Commission's ruling that certain evidence would not be considered. We quote from *Louisville and Nashville Railroad Company v. Commonwealth,* Ky., 314 S.W.2d 940 (1958).

A question of law for review by the courts may be presented as to whether or not an administrative body, acting under a broad and undefined statutory term, has taken into consideration irrelevant factors or has failed to take into consideration those that are relevant.

We find that the trial court committed no prejudicial error in considering these matters of evidence, and as a result of such consideration, making its own finding that the Commission's ruling was clearly erroneous in view of the probative and substantial evidence on the whole record. KRS 344.-240(2).

The judgment of the trial court is affirmed.

All concur.