932 F.2d 967
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bonnie COLLINS and Billie Fryman, Plaintiffs-Appellants,
v.
WEBBER FARMS, INC., Defendant-Appellee.
 No. 90-6285.
 United States Court of Appeals, Sixth Circuit.
 May 15, 1991.
 
 Before KEITH and MILBURN, Circuit Judges, and COHN, District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants Bonnie Collins and Billie Fryman appeal the district court's judgment for defendant-appellee Webber Farms, Inc. in this action alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2(a) and Kentucky Revised Statute Sec. 344.040. For the reasons that follow, we affirm.
 
 I.
 
 2
 Webber Farms, Inc. is a meat producing company located in Cynthiana, Kentucky, and it is a subsidiary of ConAgra, Inc., a national food chain. Webber hired temporary workers on a seasonal basis when production increased in the fall, and it occasionally hired former temporary workers as full-time employees. Bonnie Collins and Billie Fryman are sisters, and they were hired by Webber as temporary workers in September 1986. Both women signed a temporary work agreement which provided that employment with Webber was terminable at will, and that the work assigned would vary from day to day depending on Webber's needs.
 
 
 3
 Collins and Fryman worked on the production line at Webber where they packed meat products into boxes, and they received the same training as other temporary employees. Collins and Fryman were not assigned positions on the production line, but they often worked at the end of the line. They both had trouble keeping up with the production line because they had to pack all the products which were not packed earlier on the line by other employees. On more than one occasion, both women complained to plant manager Hargis Fryman and vice president Ed Jones that their co-workers and supervisors were not doing their jobs properly.
 
 
 4
 After working on the production line for a short time, Collins contacted Webber's director of customer service, Greg Fischer, to inquire about a position as a customer service representative. Fischer interviewed Collins and Ray Sparks for the job, and he decided to hire Sparks. Sparks had experience in the grocery business and in food sales, and he also had many contacts with grocers in the area because his family owned a grocery store.
 
 
 5
 Collins and Fryman worked on the production line through October 24, 1986, when they were laid off due to lack of work. Both women were recalled to work on November 10, 1986. Collins worked for eleven days and was again laid off due to lack of work on November 21, 1986. Fryman worked for approximately two weeks before she was again laid off due to lack of work on December 5, 1986. Collins worked a total of 41 days at Webber, and Fryman worked a total of 55 days.
 
 
 6
 Two males, A.J. Doyle and Ricky Reffett, were hired as temporary employees at Webber at approximately the same time as Collins and Fryman. Both Doyle and Reffett were laid off due to lack of work in December 1986. Thereafter, Reffett occasionally returned to work on the third shift on an emergency basis until February 1987 when he stopped working at Webber. After being laid off in December 1986, Doyle was recalled to work third shift in the maintenance department. Doyle was again laid off on March 8, 1987, but he returned to Webber in June 1987 to perform maintenance work and cut grass. Doyle was laid off at the end of the summer of 1987, and he has not been recalled.
 
 
 7
 In September 1987, Webber again hired temporary employees, and vice president Ed Jones, foreman A.J. Mitchell, plant manager Hargis Fryman, and assistant plant manager Gerald Reffett met to discuss whether Collins and Fryman should remain in the temporary workers program. The consensus was that they should not because their work was average and because they complained too much. Webber hired thirteen temporary employees in September 1987 and approximately half were women.
 
 
 8
 Collins and Fryman filed the present action on November 14, 1989, alleging that Webber discriminated against them on the basis of their sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2(a) and Kentucky Revised Statute Sec. 344.040.[1] Plaintiffs Collins' and Fryman's complaint also alleged age discrimination and defamation, but these claims were withdrawn prior to trial. Following a bench trial, the district court concluded that plaintiffs failed to establish a prima facie case of discrimination. Moreover, the district court stated that even had plaintiffs established a prima facie case, Webber articulated legitimate nondiscriminatory reasons for its actions which plaintiffs failed to show were pretextual. Accordingly, the district court entered judgment for Webber.
 
 
 9
 This timely appeal followed. The principal issue on appeal is whether the district court erred by holding that plaintiffs were not victims of gender discrimination.
 
 II.
 
 10
 Plaintiffs' Title VII claims of sex discrimination are based on the theory of disparate treatment. "To prevail on a claim of disparate treatment a plaintiff must show that her employer intentionally discriminated against her." Lynch v. Freeman, 817 F.2d 380, 382 (6th Cir.1987). "A trial court's finding on the issue of intent to discriminate is a pure question of fact, subject to review under the 'clearly erroneous' standard of Rule 52(a), Fed.R.Civ.P." Id. "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Kent County Sheriff's Ass'n v. Kent County, 826 F.2d 1485, 1492 n. 5 (6th Cir. 1987) (quoting Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)).
 
 
 11
 In disparate treatment cases, the court applies a three-step analysis under which the burden of proof remains with the plaintiff at all times:
 
 
 12
 (1) the plaintiff must establish a prima facie case of discrimination, (2) the employer must offer evidence of a legitimate, nondiscriminatory reason for its actions, and (3) the plaintiff must prove that the reason offered is in fact a pretext for intentional discrimination.
 
 
 13
 Id. at 1492; see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).[2] Plaintiffs argue that the district court clearly erred by concluding that Webber did not intentionally discriminate against them. Plaintiffs assert that they established a prima facie case of discrimination, and that the reasons offered by Webber for their discharge were pretextual.
 
 
 14
 Plaintiffs insist that indirect and circumstantial proof establishes that they were victims of disparate treatment by Webber. First, plaintiffs point to Webber's history of not hiring female employees to work in production. Plaintiffs assert that Webber's method of hiring workers by word of mouth and through employee referrals was discriminatory in that no women were hired to work in production for over thirty years. See Van v. Plant & Field Serv. Corp., 672 F.Supp. 1306 (C.D.Cal. 1987), aff'd without opinion, 872 F.2d 432 (9th Cir.1989). While some courts have held that word-of-mouth hiring may violate Title VII, plaintiffs cannot establish discrimination on this basis because they were hired.
 
 
 15
 As further evidence of disparate treatment, plaintiffs identify five males who were hired as temporary workers at approximately the same time as they were hired and who were not discharged by Webber. Plaintiffs assert that Donnie Lemmons and Johnny Jackson became permanent employees; A.J. Doyle transferred to maintenance; Dennis Jackson left Webber to enter the army, and Ricky Reffett was laid off only because Webber was having trouble with the plaintiffs.
 
 
 16
 Plaintiffs also contend that they were subject to disparate treatment by not being recalled to work in September 1987 when Webber hired thirteen new temporary employees. Plaintiffs assert that they were the only two temporary employees who were ever subjected to a work performance review by Webber management. Plaintiffs maintain that the work performance review conducted in September 1987 was concocted by management to defend against discrimination charges filed by plaintiffs in May 1987. Plaintiffs assert that the reasons given by Webber management at the work performance review for not recalling them were pretextual.
 
 
 17
 While the burden of establishing a prima facie case of disparate treatment is not onerous, it must be remembered that the plaintiff retains the ultimate burden of persuading the court that the employer intentionally discriminated. Under the deferential standard of review applicable to this case, we hold that the district court did not clearly err by concluding that plaintiffs were not victims of intentional discrimination. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer, 470 U.S. 564, 573-74 (1985).
 
 
 18
 The district court's conclusion that plaintiffs were not victims of intentional gender discrimination is plausible in light of the record viewed in its entirety. Plaintiffs were temporary at will employees who were laid off due to lack of work. Plaintiffs assert that they were treated differently than similarly situated male workers. However, any disparate treatment of male employees did not raise an inference of gender discrimination. Ricky Reffett and A.J. Doyle were temporary male production workers who were laid off at the same time plaintiffs were laid off. Between December 1986 and February 1987, the third shift foreman, Bud Tobin, occasionally called Reffett to work when he was shorthanded because Reffett had worked the third shift. Between December 1986 and the summer of 1987, Doyle was recalled twice to do lawn and maintenance work because of his experience in farming and working with machinery.
 
 
 19
 Plaintiffs' contention that they were disparately treated by being subjected to a work performance review and by not being recalled in September 1987 when new temporary workers were hired does not establish that they were victims of intentional discrimination. Even assuming arguendo that they established a prima facie case, the district court's determination that Webber articulated a legitimate, nondiscriminatory reason for not recalling plaintiffs in September 1987 is not clearly erroneous. Webber's explanation that plaintiffs were not recalled because their work was average and because they complained too much is plausible in light of the entire record. The absence of discriminatory intent on the part of Webber is bolstered by the fact that approximately half of the new temporary workers hired in September 1987 were female.
 
 
 20
 Finally, plaintiff Collins argues that the district court clearly erred by concluding that she failed to establish a prima facie case of discrimination because she was not hired for the customer service position. Collins asserts that the district court clearly erred by finding that the male hired for the position had better qualifications for the job than she did. Collins contends that since she had more experience in the grocery business than did the male who was hired, the true reason she was not hired was because she was a female.
 
 
 21
 The district court's determination that the male was better qualified for the job is not clearly erroneous. Both Collins and Ray Sparks, the male hired for the job, had experience in the grocery business. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson, 470 U.S. at 574. Therefore, the district court's conclusion that Sparks was better qualified is not clearly erroneous.
 
 III.
 
 22
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Kentucky statute is virtually identical to the corresponding section of Title VII, and Kentucky courts have followed federal law in interpreting the Kentucky statute. See Kentucky Comm'n on Human Rights v. Commonwealth, Dept. of Justice, 586 S.W.2d 270, 271 (Ky.Ct.App.1979)
 
 
 [2]
 The analysis employed by the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), is inapplicable to the present case because plaintiffs are arguing "pretext" rather than "mixed motives." See Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1313 n. 2 (7th Cir.1989)