Joyce FRAZIER, et al., Plaintiffs,

v.

FORD MOTOR COMPANY,
et al., Defendants.

Civil Action No. 3:98–CV–245H.

United States District Court,
W.D. Kentucky.

Oct. 29, 2001.

Aubrey Williams, Louisville, KY, for plaintiffs.

Michael A. Luvisi, William D. Grubbs, Woodward, Hobson & Fulton, Louisville, KY, Lisa C. Foster, Carey P. DeDeyn, Lela M. Young, Thomas G. Reynolds, IV, Sutherland, Asbill & Brennan, Atlanta, GA, for Ford Motor Co.

Herbert L. Segal, John Christopher Sanders, Segal, Stewart, Cutler, Lindsay, Janes & Berry, Louisville, KY, Connye Y. Harper, Detroit, MI, for Local 862 Intern. Union.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Defendants, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and its Local Union 862 ("Local 862"), and Kenny Yates

("Yates") move for summary judgment on claims by Plaintiffs, James Jefferson and Roosevelt Roberts, who allege that Defendants violated the Kentucky Civil Rights Act by denying them a position due to their race. This case presents some unusual circumstances which do not fit easily the standard analysis. As a consequence, the Court has undertaken these issues in a somewhat piecemeal fashion.

This Court previously dismissed certain other of Plaintiffs' claims under Section 301 of the Labor Management Relations Act. The Court now considers discrimination claims against the UAW and Local 862. There remain retaliation claims against both Union Defendants and various claims against Ford. The Court will consider pending motions as to those claims in subsequent opinions.

## I.

Plaintiffs, employees of Ford Motor Company ("Ford") and both African–Americans, serve as representatives in Local 862. The UAW appointed both to these positions in 1987 after recommendation by Ron Gettelfinger, then a Local 862 official and now the UAW Regional Director for Region Three (which includes Kentucky). Jefferson serves as a representative for production standards and job security, and Roberts as a health and safety representative. Each is charged with representing the interests of Local 862 members in his respective field.

In 1997, a position as International Representative for Region Three came open. The UAW Vice President for Region Three makes this appointment after consultation with the Regional Director and with consent of the UAW International President. The Vice President appoints these individuals based upon either his personal knowledge of prospective appointees, the recommendation of prospective appointees by the Regional Director or

local union officials, or a prospective appointee's self-recommendation.

Plaintiffs each state that they both wanted and were qualified for the position. Jefferson says that in early 1996, having heard of an impending vacancy in the position, he approached Ron Gettelfinger—who by then was Regional Director—at a union meeting and informed him of his interest in serving as an International Representative. Gettelfinger did not comment, and Jefferson made no further attempt, either verbally or in writing, to contact him. Nor did Jefferson contact Ernie Lofton, Regional Vice President and the person with all but final authority over appointments, nor any other UAW official, nor anyone from Local 862, to express his interest.

Roberts says that his interest in the position dates back to 1986 or 1987, around the time of his appointment as health and safety representative. Roberts expressed his interest more than once to Local 862 officials in the late 1980s and early 1990s, but does not claim that he has made known his interest since 1992 or 1993. He never contacted the UAW Regional Director or Vice President or any other UAW official.

In May 1997, Lofton appointed Jerry Young, a local-union vice president, to the position. Plaintiffs argue that Young was less qualified and that his appointment constitutes unlawful discrimination. As evidence of a pattern or practice of such discrimination, Plaintiffs allege that no African–American from Local 862 ever served as an International Representative for Region Three until after the filing of this action in 1998.

## II.

Because the Kentucky Civil Rights Act so closely resembles Title VII of the federal Civil Rights Act of 1964, to state a claim

thereunder "a plaintiff must prove the same elements as required for a prima facie case of discrimination under Title VII." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1250 (6th Cir.1995); *see also Kentucky Comm'n on Human Rights v. Commonwealth of Kentucky*, 586 S.W.2d 270, 271 (Ky.Ct.App.1979).

To meet the Title VII burden of establishing a prima facie case of racial discrimination in hiring, a plaintiff must show "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff succeeds, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If the employer offers such a reason, the Plaintiffs must then "be afforded a fair opportunity to show that [the] stated reason for [their] rejection was in fact pretext." *Id.* at 804, 93 S.Ct. 1817.

### A.

█ This is an unusual case for several reasons. Plaintiffs are actually employees of Ford, though they work on behalf of the UAW to serve the interests of Local 862. The UAW made their current appointment and the UAW makes the appointment which they now seek. Though Ford pays their salary, it does not control their work or their promotion within the UAW hierarchy. Though Local 862 has an interest and a say in Plaintiffs' advancement, it does not make the appointment they desired.

█ For purposes of the issues present, then, the Court considers Plaintiffs to be employees of the UAW; therefore, Plaintiffs state no claim for failure to hire or promote against entities which are not their employer and which do not control their appointment. Additionally, under the law of this Circuit, Plaintiffs may not sue Yates in his individual capacity for violations of Title VII. *See Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir.1997). Therefore, the claims against Local 862 and Yates are dismissed.

### B.

Another unusual aspect of this case is that the appointment itself has a distinctly political flavor. For that reason it is more difficult to define either the precise job qualifications or the criteria upon which any particular choice is based. Lofton and Gettelfinger acknowledge that there is no clear set of criteria to establish eligibility for a position as International Representative; rather, the Regional Vice President looks to such subjective criteria as union loyalty, integrity, and quality of past performance. Because there are no clear, objective criteria, what Defendant essentially argues is not that Plaintiffs are objectively unqualified, but that Plaintiffs were not appointed—or, evidently, even considered—because they were subjectively viewed as unqualified by those who might have recommended them. Whether Plaintiffs were more or less objectively qualified than the person actually chosen, then, is not an issue which can or should decide this case.

█ Defendant states as its legitimate, nondiscriminatory reason for not appointing Plaintiffs that they did not meet its subjective criteria. Specifically, Plaintiffs a) were active in a civil rights organization called the Black Awareness Coalition, which posed a possible conflict of interest, and b) immersed themselves in Local 862 civil rights matters that were beyond their

authority. Plaintiffs must show that this defense is a pretext and that they were not appointed because of some unlawful reason.

## C.

Finally, the appointment is quite unlike the usual employer promotion, where workers apply for a particular position. Here, the application process is informal at best. This requires the Court to consider whether Plaintiffs applied for the job, as required by the second prong of the *McDonnell Douglas* test.

Plaintiff Jefferson contends that he verbally informed Regional Director Ron Gettelfinger of his interest in the position shortly before the position became open, and Plaintiff Roberts contends that he made his interest known to Local 862 officials, albeit years before the position became open. While both the Regional Director and local union officials may recommend persons to the Regional Vice President for appointment, the decision-maker is the Regional Vice President. The question here, then, is whether Plaintiffs' approach to lower-level officials and expression to them of interest in the position constitutes application for employment under *McDonnell Douglas* and its progeny.

Our Circuit precedent suggests that in some cases the application requirement must be waived. In *Dews v. A.B. Dick Co.*, 231 F.3d 1016 (6th Cir.2000), *reh'g denied*, 2001 U.S.App. LEXIS 1340 (2001), the Court of Appeals held that "in failure to promote cases a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion." *Id.* at 1022. In *Dews*, the defendant employer had no formal application mechanism, so the plaintiff expressed to his supervisor an interest in promotion to regional sales manager. The supervisor told Dews that he was not qualified, and did not recommend him. Because Dews had no opportunity to formally apply, the court released the plaintiff from having to meet the "applied for" prong of the *McDonnell Douglas* test. *Id.* at 1021.

As noted above, Regional Vice President Ernie Lofton has stated that he appoints persons to be International Representatives on one of three bases: his own personal knowledge, a recommendation by the Regional Director or local union officials, or self-recommendation. While the Sixth Circuit in *Dews* did not address whether the plaintiff could have directly addressed his request for a promotion to his employer's decision-makers, it did note that Dews had asked his supervisor "if he could be considered for the position," *id.* at 1019, which suggests that a supervisor's recommendation was all that passed in the company for a mechanism for promotion.

Plaintiffs did not need a recommendation from either the Regional Director or Local 862 officials to make their interest known. They could have submitted letters to Lofton notifying him of their interest, but they failed to do so. Moreover, Plaintiff Roberts failed even to express interest to anyone at any time in the four years prior to the position's availability.

Our case seems unlike *Dews* in another important way. In *Dews*, the position that the plaintiff desired (sales manager) was one for which anyone who met certain objective criteria (*e.g.*, experience in managing sales) might be expected to apply. In contrast, the position of union representative is a more political one, subject to subjective criteria, which not everyone who may be objectively qualified would necessarily want. Those who do want such a job should be expected to make their

wishes known. Without such evidence of an expression of interest, it is problematic to say that Defendant considered and rejected Plaintiffs on the basis of race.

## III.

Even if this Court finds that Plaintiffs have established a *prima facie* case, they have failed to present sufficient evidence that the UAW's legitimate non-discriminating reason was a mere pretext. The reasons articulated are that Lofton, the UAW appointing authority, did not know Plaintiffs, and Gettelfinger and Yates did not recommend Plaintiffs due to disputes which arose during their current terms as representatives of Local 862. The preponderance of evidence suggests that those reasons are valid and not pretextual.

The evidence is unrebutted that the actual appointing authority, Lofton, knew neither Plaintiff and that neither Plaintiff made an appeal directly to him. Plaintiff Jefferson appealed instead to Gettelfinger, to whom the UAW has given the discretion whether or not to recommend individuals for appointment to UAW positions. Jefferson has offered no evidence whatsoever that Gettelfinger declined to recommend him for appointment because of unlawful racial animus. Gettelfinger has in fact nominated a number of African–Americans—albeit, not from Local 862—to be International Representatives. In fact, as noted above, Gettelfinger nominated Plaintiffs Jefferson and Roberts to their current positions. These facts are not dispositive proof that Gettelfinger has never acted with discriminatory motives, but in the absence of any evidence that Gettelfinger acted with discriminatory motives in this or any other instance, these facts are persuasive.

Plaintiff Roberts states that Yates did not recommend him because Yates and he had disagreed vehemently on what role, if any, Roberts should play in supporting civil rights complaints by members of Local 862 against Local 862 and Ford. Title VII, of course, protects employees and applicants from retribution for having opposed an unlawful employment practice. *See* 42 U.S.C. § 2000e–3(a); *but see Holden v. Owens–Illinois, Inc.,* 793 F.2d 745 (6th Cir.), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 704 (1986) ("There may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective ...") (quotation, citation omitted).

Though Roberts has offered a possible explanation for Yates' failure to recommend him, he has not offered sufficient proof that either racial discrimination or resentment of his civil rights activism is responsible for his not being appointed. First, Roberts did not express interest in the position to Yates or anyone else at any time after 1993. Second, Lofton, the official responsible for appointing International Representatives, is himself African–American, which further weakens Plaintiffs' claim that the UAW discriminates in any dearth of appointments of African–Americans to positions of leadership. *Cf. Hardy v. Marriott Corp.,* 670 F.Supp. 385, 391 (D.D.C.1987) (African–American evaluators' negative evaluations of African–American plaintiff "negate any inference of racial discrimination."). Even if, for the sake of argument, the Regional Director and Local 862 officials had discriminated on the basis of race in not recommending African–Americans for promotion to this particular position, Plaintiffs had the opportunity to contact Lofton directly for appointment as International Representatives. Any disagreement with Local 862 officials or policies, then, was not a disqualifier from appointment.

Ultimately, the question is whether the appointing authority had a racial bias or animus that affected his decision. In this case the appointing authority is an African–American who has previously appointed African–Americans from other local unions to positions of International Representative. This suggests that racial bias was not a factor here.

## IV.

Finally, Plaintiffs allege that, prior to their filing suit in 1998, no African–American in Local 862 had ever been appointed an International Representative for Region Three, and submit this as evidence that an "old boy network" exists in the UAW which keeps qualified African–Americans from being appointed to high positions.

However, Plaintiffs offer no statistical data to support the argument that a failure by UAW to promote African–Americans from Local 862 to be International Representatives indicates systemic disparate treatment. While it is certainly true that, "[w]here gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination," *see Hazelwood School District v. United States,* 433 U.S. 299, 307–08, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), Plaintiffs have not submitted evidence of such statistical dispari-

ties to this Court.[1] Plaintiffs offer no evidence of the number of African–Americans who have been qualified for the position or who have wanted the position.

The Court will enter an order consistent with this memorandum opinion.

## ORDER

Defendants United Automobile, Aerospace and Agricultural Implement Workers ("UAW") and UAW Local Union 862, and Kenny Yates have moved for summary judgment.

The Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment on Plaintiffs' claims of racial discrimination in hiring is SUSTAINED, and those claims are DISMISSED WITH PREJUDICE.

There remain retaliation claims against the UAW and Local 862 as well as a variety of discrimination claims against Ford.

---

1. The Supreme Court held in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), that the Teamsters' record of hiring minorities as long-distance drivers (0.4% of long-distance drivers were African–American, 0.3% were Spanish-surnamed) approached "the inexorable zero," which, compared to the proportion of minorities in the areas from which the Teamsters hired (in Atlanta, for example, 51% of city residents were African–American), was sufficient to rebut the employer's attack on the Government's statistics. *Id.* at 337–42, nn. 17, 23, 97 S.Ct. 1843. Here, however, Plaintiffs fail to introduce statistics

to put into proper context the fact that, before their civil action, no African–Americans from Local 862 had been appointed International Representatives. Further, "the inexorable zero" here is less persuasive than in the *Teamsters* case because "courts have traditionally shown greater deference to subjective job appraisals in the context of 'white collar' or professional positions. This approach has been taken because such positions tend to be more difficult to evaluate in a more objective quantitative fashion than 'blue collar' jobs." *Ross v. William Beaumont Hospital,* 678 F.Supp. 655, 678 (E.D.Mich.1988).