**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0505n.06

**No. 09-5683**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 13, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| LORD VINCENT SCOTT, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellant,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| G & J PEPSI-COLA BOTTLERS, INC., | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellee.** | ) | |

BEFORE:  BOGGS and NORRIS, Circuit Judges; ADAMS, District Judge.[*]

**ALAN E. NORRIS, Circuit Judge.**  Plaintiff, Lord Vincent Scott, appeals the district court's grant of summary judgment in favor of defendant, G & J Pepsi-Cola Bottlers, Inc. ("the Company"), on Mr. Scott's claims for racial and disability discrimination under Kentucky state law. We affirm.

**I.**

Mr. Scott is an African-American who worked for the Company for approximately twenty-six years before his employment was terminated on July 29, 2007.  During his tenure at the Company, he was directly subjected to two racial comments by co-workers, and he witnessed three racial comments directed at others.  He also became aware of an incident at another of the Company's facilities in Winchester, Kentucky, where an unknown person placed a hangman's noose on the desk

_____

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

of an African-American employee. According to Mr. Scott, the Company knew about these instances of racial harassment but took no disciplinary action, thereby creating a racially hostile work environment.

Also while working for the Company, Mr. Scott sustained a wrist injury resulting in a work disability rating of five percent. His physician placed him on lifting restrictions of ten pounds with his right hand and twenty pounds bilaterally. Because of these lifting restrictions, Mr. Scott was unable to resume the duties of the position he held before he injured his wrist. Mr. Scott alleged that he was capable of performing the duties of many other positions at the Company's plant, but that when he asked the Company to accommodate his limitations, it refused, thereby denying him work on the basis of his wrist impairment. According to Mr. Scott, he was forced to remain on leave despite his repeated requests to return to work. He remained on leave for twenty-four months. At the end of that period, the Company terminated his employment.

Thereafter, Mr. Scott filed suit, alleging state statutory claims for racial and disability discrimination in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.040(1). After discovery, the Company moved for summary judgment on both claims, asserting that Mr. Scott had failed to establish a prima facie case for either claim.

The district court granted summary judgment on the racial discrimination claim based upon its determinations that Mr. Scott had failed to point to evidence showing that the conduct in question was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that Mr. Scott had failed to point to evidence that the Company tolerated or condoned racially harassing conduct. The district court granted summary judgment on Mr. Scott's disability discrimination claim based upon its determination that Mr. Scott had failed to present sufficient

evidence that his wrist injury was a disability under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12102 as applied by Ky. Rev. Stat. § 344.040. On appeal, Mr. Scott challenges the district court's rulings on both claims.

## II.

A. *Standard of Review*

We review a district court's grant of summary judgment *de novo. Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence, and make all reasonable inferences, in favor of the nonmoving party. *Matsushita Elec. Indus. Co.v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

B. *The Racial Discrimination Claim*

Racial discrimination claims filed pursuant to Ky. Rev. Stat. § 344.040(1) are analyzed under the standards applied to federal racial discrimination claims brought pursuant to Title VII of the Civil Rights Act of 1964. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000) (citing *Kentucky Comm'n on Human Rights v. Commonwealth*, 586 S.W.2d 270, 271 (Ky. Ct. App. 1979)); *see also Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005) (construing sex discrimination claim) (citing *Ammerman v. Bd. of Educ. of Nicholas County*, 30 S.W.3d 793, 797-98 (Ky. 2000)).

Racial discrimination which creates a hostile or abusive work environment is actionable under Title VII. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986).

A plaintiff establishes a prima facie case of racial discrimination based upon a hostile work environment by showing that (1) the plaintiff was a member of a protected class; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was race-based; (4) the harassment unreasonably interfered with the plaintiff's work performance by creating an environment that was intimidating, hostile, or offensive; and (5) the employer was liable for the harassing conduct. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)). To satisfy the fourth element, "unreasonable interference," a plaintiff "must present evidence showing that under the 'totality of the circumstances' the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Id.* at 707 (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560, 562 (6th Cir. 1999) (in turn quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted))). To satisfy the fifth element, "employer liability," a plaintiff must demonstrate "that [the plaintiff's] employer 'tolerated or condoned the [alleged conduct]' or 'that the employer knew or should have known of the alleged conduct and failed to take prompt remedial action.' " *Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999) (quoting *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988)).

In assessing Mr. Scott's hostile work environment claim, the district court concluded that Mr. Scott failed to satisfy the "unreasonable interference" and the "employer liability" elements required to establish a prima facie case. With respect to the "unreasonable interference" element, the district court rejected Mr. Scott's contention that the infrequent, sporadic comments by low-level employees

- 4 -

over a twenty-six-year period were sufficiently severe or pervasive to interfere with his work. As to the "employer liability" element, the district court concluded that even if the incidents that Mr. Scott identified did create a racially hostile work environment, the Company's knowledge of three incidents over a twenty-six-year period cannot establish that the Company knew or should have known about an ongoing hostile work environment but did nothing to correct it or otherwise tolerated or condoned it.

Upon *de novo* review, we agree with the district court that Mr. Scott failed to establish a prima facie case of racial discrimination. He complains of a total of five incidents occurring over a span of twenty-six years which were directed at him or that he witnessed. He complains of an additional incident about which he was aware, but did not personally witness, which occurred at a facility other than the one where he worked. Under no objective standard can these few, isolated occurrences over twenty-six years be considered pervasive or severe enough to create a hostile work environment that affected his work. *See, e.g.*, *Smith*, 220 F.3d at 760-61 (over twenty-year period, single use of a racial slur directed at plaintiff, racially offensive and graphic cartoon circulated by plaintiff's supervisor, joke told by supervisor using racial slur, and reference by a co-worker to a black employee as a "gorilla" deemed insufficiently severe or pervasive to constitute objectively hostile work environment); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (in sexual harassment context, five incidents of harassing conduct occurring over five-year period did not constitute severe or pervasive conduct); *Burnett v. Tyco Corp.*, 203 F.3d 980, 984-85 (6th Cir. 2000) (in sexual harassment context, three offensive incidents involving plaintiff's supervisor within six-month period not so severe as to create a hostile work environment). While the incidents Mr. Scott describes are offensive, they are too isolated to establish a pervasive course of conduct, and

they are not severe enough to create an intimidating, hostile environment that interfered with his work.[1]

Moreover, Mr. Scott's prima facie case fails because he has not established employer liability. He has presented no evidence that the Company knew of and tolerated an ongoing hostile work environment. To the contrary, the evidence in the record establishes that, with the exception of one event some twenty-odd years ago which resulted in no disciplinary action, the Company acted promptly and decisively to end the conduct when the Company became aware of discrete instances of harassment.

Because Mr. Scott has failed to establish the "unreasonable interference" and the "employer liability" elements of his prima facie hostile work environment case, we affirm the district court's grant of summary judgment on that claim.

## C. *The Disability Discrimination Claim*

To make a prima facie case of disability discrimination, Mr. Scott must establish that he (1) is "disabled"; (2) is "otherwise qualified" to perform the requirements of the job with or without reasonable accommodation; and (3) suffered an adverse employment decision because of his disability. *Hallahan v. Courier-Journal*, 138 S.W.3d 699, 706-07 (Ky. Ct. App. 2004) (citing *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001)). The Kentucky Civil Rights Act defines "disability" as "(a) [a] physical or mental impairment that substantially limits one . . . or more of the major life activities of the individual; (b) [a] record of such an impairment; or (c) being

---

[1]Indeed, Mr. Scott admitted in his deposition testimony that his job performance was not affected by any single incident or the cumulative effect of all incidents.

regarded as having such an impairment." Ky. Rev. Stat. § 344.010(4).[2] A "major life activity" is one that is "of central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).[3]

In granting summary judgment in the Company's favor, the district court observed that the only evidence Mr. Scott presented concerning the disability element of his discrimination claim was evidence that he had a twenty-pound bilateral lifting restriction, a ten-pound lifting restriction with his right hand, and a five-percent disability rating. The district court held that the evidence provided by Mr. Scott was insufficient to make a prima facie case of disability discrimination because he had failed to show that his lifting restrictions rendered him unable to perform–or substantially limited his ability to perform–centrally important daily life functions.

Mr. Scott contends that his factual allegations concerning the extent of his wrist injury created an issue for the jury to determine whether his lifting restrictions substantially limited daily life activities. In his view, the Company was required to make an individualized assessment of his wrist injury and to reasonably accommodate the limitations imposed by that injury. Mr. Scott

---

[2]The district court quoted the definition of "disability" from the ADA, which is almost identical to the definition used in the state statute. As written at the time of Mr. Scott's termination, the ADA defined "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2007).

[3]Although Congress enacted legislation on September 25, 2008, "repudiating *Toyota's* strict standard for finding a disability under the ADA and expressing its intent that the ADA be construed in favor of broad coverage, effective January 9, 2009[,]" *Jenkins v. Nat'l Bd. of Med. Exam'rs*, No. 08-5371, 2009 WL 331638, at *1 (6th Cir. Feb. 11, 2009), Mr. Scott's termination occurred before the 2008 amendments became effective. Thus, we consider his disability discrimination claim under the law as it existed before the amendments. *See Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 567 (6th Cir. 2009) (no retroactive application of ADA Amendments Act to pre-amendment conduct). Accordingly, the *Toyota* standard applies.

concludes that because the Company failed to consider him for a position that he could perform within his limitations, it discriminated against him on the basis of his impairment.

Mr. Scott's arguments lack merit. He has not directed us to any portion of the record showing that his wrist injury substantially limits a major life function, and evidence of Mr. Scott's lifting restrictions, standing alone, is insufficient to qualify as a "disability" for purposes of this claim. *See Toyota*, 534 U.S. at 195 ("[m]erely having an impairment does not make one disabled for purposes of the ADA").[4] Similarly, Mr. Scott has failed to present any evidence of the Company's failure to accommodate his impairment. The evidence shows that the only position on which Mr. Scott bid after sustaining his wrist injury went to a fellow union employee with greater seniority, a decision that Mr. Scott concedes was proper in light of the governing collective bargaining agreement. Given these failures, Mr. Scott failed to establish a prima facie case of disability discrimination. Accordingly, we conclude that the district court properly granted summary judgment in favor of the Company on Mr. Scott's disability discrimination claim.

**III.**

The judgment of the district court is **affirmed**.

---

[4]To the extent that, on appeal, Mr. Scott alleges that the Company perceived him as disabled, we note that he failed to raise that argument below. Accordingly, it is not properly before us and we do not consider it. *See B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 (6th Cir. 2008) (absent exceptional circumstances, this court "cannot consider an issue not passed on below") (quoting *St. Marys Foundry, Inc. v. Employers Ins. of Wausau*, 332 F.3d 989, 995-96 (6th Cir. 2003)).