Sandra ROSTEUTCHER, Plaintiff,

v.

**MIDMICHIGAN PHYSICIANS GROUP, Defendant.**

No. 03–10211–BC.

United States District Court, E.D. Michigan, Northern Division.

Aug. 30, 2004.

Julie A. Gafkay, Frankenmuth, MI, for Plaintiff.

Craig H. Lubben, Miller, Johnson, Kalamazoo, MI, for Defendant.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

LAWSON, District Judge.

The plaintiff, Sandra Rosteutcher, was employed as medical practice manager by the defendant at one of its Midland, Michigan facilities until she resigned her position to relocate to another region due to her husband's employment. When her family's plans changed, she asked to return to her former job and, when that option was no longer available, she applied for other positions with the defendant and was not hired. She claims that the actions of the defendant were discriminatory and violated the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, the Persons With Disabilities Civil Rights Act (PWDCRA), Mich. Comp. L. § 37.1101 *et seq.*, and the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.* The defendant has filed a motion for summary judgment, to which the plaintiff has responded. The Court has reviewed the submissions and finds that the relevant law and facts have been set forth in the motion papers and that further oral argument will not aid in the disposition of the motions. Accordingly, it is **ORDERED** that the motions be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2).

The Court finds that the plaintiff has brought forth sufficient evidence to create a material fact question on whether she is "disabled" within the meaning of the relevant statutes, refusing to retain and rehire the plaintiff constituted an adverse action by her employer, the record contains no direct evidence of discrimination or retaliation by the defendant, the plaintiff has brought forth circumstantial evidence sufficient to create a material fact issue from which a jury could conclude that the failure to retain the plaintiff was motivated by the defendant's unlawful discrimination, and the failure to hire the plaintiff did not result from discrimination or retaliation against her for asserting rights protected by the legislation mentioned earlier. The Court therefore will grant the motion in part and deny in part the motion for summary judgment.

I.

Defendant MidMichigan Physicians Group is an association of medical providers that operates several doctors' offices and clinics dealing with a variety of medical specialities in six counties in the central area of Michigan's lower peninsula. The defendant hired Sandra Rosteutcher, the plaintiff, in August 2000 to be a practice manager for one of the defendant's family practice groups located in Midland, Michigan. A practice manager is an administrator who is responsible for the day-to-day functions of the medical practice in areas including clerical support, billing, scheduling, and other non-medical operations. Rosteutcher was hired by and reported to Peter Michels, the regional director over the family practice groups.

It appears that the defendant followed a practice of conducting annual performance reviews of its practice managers. The parties agree that the plaintiff's July 2001 review was positive, although points of improvement concerning her organizational skills were suggested. The performance review for August 1, 2002 was mixed: Michels expressed concern over the plaintiff's management style and her response to several challenges in areas of labor relations, cost-cutting, and productivity; however he concluded that the plaintiff was "capable of remaining focused, staying on

task, and able to multi-task without much reminder," and "should quickly and satisfactorily overcome the shortcomings of the past year." Pl.'s Dep., Ex. 10. The parties agree that the August 2002 review took into account the fact that the plaintiff was absent thirteen times between January 2002 and the review date.

Two weeks later, on August 15, 2002, Rosteutcher requested and was granted a leave of absence. She suffered a seizure on that day and was diagnosed with a seizure disorder. She testified that she awoke from unconsciousness and was disoriented and had a severe headache. She sought medical treatment, eventually was referred to a neurologist, and on August 21, 2002 received a positive result from an electroencephalogram. The plaintiff remained on leave until September 10, 2002, and she was notified that her leave was covered by the Family and Medical Leave Act. The plaintiff received short term disability during her absence from work and was returned to her former position with the same pay and benefits.

Two days after she returned to work, the plaintiff met with Adelberto Adan, the defendant's chief operating officer and Michels' supervisor (Michels was unavailable at the time) to state that she was resigning her position because her husband had found work in Manistee, Michigan. The plaintiff offered to continue working, however, until the defendant found a replacement for her. Adan informed Michels sometime later, and the plaintiff reiterated her intention to resign to Michels on September 19, 2002. Michels asked the plaintiff to put her resignation in writing.

On September 30, 2002, the plaintiff moved to Manistee, Michigan but commuted to work for the defendant in Midland. However, the plaintiff's husband's job opportunity did not materialize. The plaintiff testified that she informed Michels in October 2002 that she could remain in her current position. Michels testified that he did not receive this information until November 22, 2002. The parties agree, however, that Michels did not accede to the plaintiff's request and persisted in asking for her written resignation.

On October 17, 2002, the plaintiff took another leave of absence because of her seizure disorder. She remained off of work until November 11, 2002. Once again, the defendant considered this absence covered by the Family Medical Leave Act, and the plaintiff received short term disability benefits during that time. She came back to work as the practice manager in Midland where she remained officially through January 3, 2003.

Sometime in November 2002, the plaintiff complained to Kris Dexter in the defendant's human resources department that Michels persisted in his request for the plaintiff's written resignation despite the fact that she had informed him that she could remain in her position. The plaintiff expressed the belief to Dexter that Michels disapproved of the FMLA leave taken by the plaintiff. The plaintiff said that she learned of an open practice manager position with the defendant in Clare, Michigan, and that she intended to pursue it. She testified that Michels told her that she must tender a written resignation before she would be eligible to transfer to another position. Dexter informed the plaintiff that Michels intended to replace her because of his concerns over performance issues, and she counseled the plaintiff on how to word her written resignation. The plaintiff tendered the written resignation to Michels on November 18, 2002 and informed him that she was still pursuing the position in Clare.

The plaintiff and Michels met on November 22, 2002 to discuss the plaintiff's status with the organization. Michels told the plaintiff that he was concerned about

"events occurring in her personal life [that] were affecting her work performance." Dep. of Peter Michels at 63–64. Michels testified that he was aware at that point that plaintiff was suffering from seizure disorders and the attendant migraine headaches that accompanied them. Michels told the plaintiff that he had continued to seek a replacement for her and had extended an offer to another candidate the previous day. The plaintiff asked to be considered for the position if the candidate declined. However, the plaintiff's replacement accepted the position to begin work on January 6, 2003. It was agreed that the plaintiff would work through January 3 and the defendant paid her salary and benefits through that date; however later the parties agreed that the plaintiff's last day in the office would be December 7, 2002.

The plaintiff testified that on December 5, 2002, she met with CEO Adan to complain that Michels "was holding against me the fact that I did take FMLA." Pl.'s Dep. at 143. She told Adan that she had suffered from headaches and seizures, and she expressed concern that these facts might adversely influence the hiring decision for the Clare position. Adan said that he did not investigate the concerns but reassured the plaintiff that the regional manager, Cheryl Yesney, would not be biased. The plaintiff later reiterated her complaint to Michael Hicks, the company's vice president of human resources. Hicks relayed the plaintiff's concerns to Michels. However, both Hicks and Adan testified that they did not share any information about the plaintiff with Cheryl Yesney.

Sometime before the plaintiff's last day at work at the Midland family practice group, she interviewed with Cheryl Yesney for the practice manager position in Clare. Yesney testified that she had two other candidates whom she had interviewed, and who she believed were more suited for the

position than the plaintiff. Yesney stated that she did not review the plaintiff's personnel file because she was familiar with the plaintiff from group meetings and had worked with her in the past. Yesney testified that she was concerned about the plaintiff's performance in one area, and she believed that the plaintiff did not measure up to her qualifications. Yesney ultimately choose one of the other two candidates who was under consideration for the position.

On March 5, 2003, the plaintiff learned that the defendant posted an opening for a position as practice group manager for a mental health practice in Midland. Michels, as regional director of that practice, was responsible for filling the position. The plaintiff contacted Michels and expressed her interest in the position, and the two of them met sometime before April 23, 2003. The plaintiff related that the conversation at the meeting centered on Michels' concern over past performance issues, including her lack of dependability. The plaintiff stated that Michels commented that she "appeared much healthier" than earlier. Pl.'s dep. at 201. Nonetheless, Michels recommended that the physicians on the hiring committee interview the plaintiff. The plaintiff was interviewed by three physicians and a nurse practitioner, all of whom completed evaluation sheets. Two other candidates were interviewed as well, and one of them, Joanne Heal, scored higher than the plaintiff on all of the evaluators' rating sheets. The evaluators each filed affidavits stating that prior experience in a mental health practice was an important consideration in their hiring decision, and Ms. Heal satisfied that criterion. Ms. Heal was ultimately hired, and the plaintiff did not get that job.

On July 17, 2003, the plaintiff learned of an opening in the defendant's orthopedic

practice group. The plaintiff contacted Hicks in the human resources department to express her interest, and on August 4, 2003 he informed the plaintiff that Barb Miller, the regional director for that practice, was already conducting interviews. The plaintiff spoke with Miller the following evening, and Miller informed her that she had already extended an offer to another candidate. Hicks asked Miller to interview the plaintiff, but she declined because an offer had already been made to someone else. The plaintiff was not hired for that position.

On September 10, 2003, the plaintiff filed a seventeen-count complaint in this Court alleging that the defendant discriminated against her because of a disability in violation of the ADA and the PWDCRA, and retaliated against her for taking medical leave in violation of the FMLA. The plaintiff claims that the defendant discriminated and retaliated against her by forcing her to resign as practice manager from the Midland family practice group, and failing to hire her as practice manager for the three open positions to which she applied. On June 4, 2004, the defendant filed a motion for summary judgment alleging that the plaintiff's claims under the ADA and the PWDCRA must be dismissed because the undisputed facts demonstrate that the plaintiff is not disabled within the meaning of those statutes, the defendant did not take an adverse employment action against her, and the defendant had a legitimate, nondiscriminatory reason for ending the plaintiff's employment and not hiring her for another position. The defendant also contends that there is no evidence in the record supporting the plaintiff's claim that the defendant violated the FMLA by failing to restore her to the position she enjoyed before taking leave, and retaliating against her for taking the leave to begin with. The plaintiff has filed an answer in opposition to the motion.

## II.

A motion for summary judgment under Rule 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 581 (6th Cir.2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler,* 215 F.3d 594, 599 (6th Cir.2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.,* 14 F.3d 1143, 1148 (6th Cir.1994) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala,* 205 F.3d 937, 943 (6th Cir.2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Simmons–Harris v. Zelman,* 234 F.3d 945, 951 (6th Cir. 2000). Thus a factual dispute which "is merely colorable or is not significantly pro-

bative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.1993); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

 The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir.2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

 The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir.2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir.1991).

### A.

With these standards in mind, the Court turns first to the plaintiff's claims under the ADA and the PWDCRA. Those claims can be addressed in tandem because, as the parties have acknowledged, the claim under Michigan law mirrors the federal claim. *Monette v. Electronic Data Sys., Inc.*, 90 F.3d 1173, 1177 n. 3, 1186 (6th Cir.1996) (holding that because claims of disability discrimination under Michigan law essentially track those under federal law, resolution of Monette's claim under the ADA also dispensed with his claims under the PWDCRA).

Congress enacted the Americans with Disabilities Act in an effort to "eliminate[ ] discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The Act prohibits qualifying employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to ... hiring, advancement or discharge, ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). If an employee suffers discrimination because he or she has a disability as defined by the ADA, has a record of having such a disability, or is regarded by his or her employer as having such a disability, 42 U.S.C. § 12102(2), the employee may bring an action seeking various remedies, including damages, provided that the employee first files a timely complaint with the EEOC. 42 U.S.C. §§ 12117, 2000e–5(f)(1). *See Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299 (6th Cir.2000).

 When an employer moves for summary judgment on an ADA claim, an employee must come forward with evidence that demonstrates genuine material fact issues on each of the following elements: (1) the plaintiff is an individual with a disability; (2) she is 'otherwise qualified' to perform the job requirements,

with or without reasonable accommodations; and (3) her employer performed an adverse employment action against her by reason of her disability. *Williams v. London Utility Com'n,* 375 F.3d 424, 428 (6th Cir.2004) (citing *Cotter v. Ajilon Servs.,* 287 F.3d 593, 598 (6th Cir.2002)).

### 1.

 The defendant first contends that the plaintiff was not "disabled" within the meaning of the ADA. To be "disabled," the plaintiff must have a "physical impairment" which "substantially limits a major life activity." *McKay v. Toyota Motor Mfg. U.S.A., Inc.,* 110 F.3d 369, 372 (6th Cir.1997). Federal regulations refer to a hypothetical "average person in the general population" as a benchmark for evaluating substantial limitations on life activities. *See* 29 C.F.R. § 1630.2(j)(1) (stating that a person is substantially limited if she is "[u]nable to perform a major life activity that the average person in the general population can perform, or [is s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity"). Factors to consider in making this assessment include "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2). Short-term, temporary limitations on major life activities do not constitute disabilities under the ADA. *See Roush v. Weastec, Inc.,* 96 F.3d 840, 844 (6th Cir.1996).

The plaintiff alleges that she is disabled by seizures, migraine headaches, and depression. The defendant argues that these impairments do not rise to the requi-site level of severity to qualify under the statute. Moreover, the defendant suggests that the conditions are alleviated with medication.

 "Depression" qualifies as an impairment under the ADA. 29 C.F.R. § 1630.2(h)(2). The question which remains, therefore, is "whether a reasonable jury could conclude that [the] depression substantially limited a major life activity." *Swanson v. Univ. of Cincinnati,* 268 F.3d 307, 315 (6th Cir.2001).

 In determining whether a condition subject to treatment is substantially limiting, the Court must take account of the treatment prescribed and administered. Thus, "[t]he use or nonuse of a corrective device does not determine whether an individual is disabled; that determination depends on whether the limitations an individual with an impairment *actually* faces are in fact substantial limiting." *Sutton v. United Air Lines,* 527 U.S. 471, 488, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (emphasis in original). If, for instance, an otherwise substantially limiting impairment is brought under control with medication, the individual is not disabled. *Hein v. All America Plywood Co., Inc.,* 232 F.3d 482, 487 (6th Cir.2000) (Plaintiff who "functions normally and has no problems 'whatsoever'" with aid of blood-pressure medication not disabled). On the other hand, if the medication itself produces disabling side-effects, a finding of disability is appropriate. *Sutton,* 527 U.S. at 484, 119 S.Ct. 2139.

The plaintiff states that her migraine headaches are severe and debilitating. In an affidavit, she avers that she suffers severe migraine headaches at least two to three times per week, and sometimes they last for several days. She claims that when she has an attack of migraine headaches, she is unable to perform daily activities such as cooking, working and

spending time with her spouse and grand-children. She takes medication, which she describes as a powerful narcotic, but then is unable to perform any activity but sleep until the migraine goes away.

The plaintiff also avers that when she suffers a seizure, she loses consciousness and is unable to see, hear, speak, or work. The headaches follow the seizures. The plaintiff states that following a seizure she loses her driving privileges for at least six months, and that she suffered seizures in August and October of 2002 and March and June of 2004. It is because of the seizures and headaches, the plaintiff states, that she sought and obtained medical leave under the FMLA in August and October, 2002.

The Court finds that the plaintiff has come forward with sufficient evidence to create a question of fact on the first element of her disability discrimination claim under the ADA, especially upon application of the indulgent standard the Court must apply to the evidence at the summary judgment stage of the proceedings. She demonstrated that her seizures and migraine headaches limited her ability to function and perform basic life tasks during the episodes, "major life activities" under federal law, to a degree that is significantly less than the average person in the general population. The conditions are not temporary or short-term, but rather they recur. Reasonable minds could differ on the question of whether the plaintiff suffered from a disability.

### 2.

■■■■ The defendant next contends that the plaintiff suffered no adverse employment action because she voluntarily resigned from her position. In this Circuit, the court evaluates adverse employment action in the context of the ADA according to the factors adopted from the Seventh Circuit's decision in *Crady v. Liberty Nat. Bank and Trust Co.*, 993 F.2d 132 (7th Cir.1993). *See Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir.1996). In *Crady*, the court stated:

a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

993 F.2d at 136.

■■■■ "When an employee voluntarily resigns, he cannot claim that he suffered an adverse employment decision under the ADA or the FMLA." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999). The question of whether an employee's action constitutes a resignation that permits an employer to invoke this rule requires reference to state law. *Ibid.* In Michigan, a resignation that is not immediately effective generally will not preclude a claim for discrimination that occurs in the interregnum. *See Cain v. Allen Elec. & Equipment Co.*, 346 Mich. 568, 580, 78 N.W.2d 296 (1956) (stating that where a defendant fires an employee who has turned in a notice of resignation "[t]o argue that defendant merely 'accelerated' plaintiff's departure confuses the actual termination with the reason therefore").

■■■ In this case, the evidence presented by the plaintiff and viewed in the light most favorable to her establishes that she informed Michels, her supervisor, of her intention to resign in order to relocate to another part of the state with her husband, and Michels responded that company policy required that she state her intention in writing. Before the plaintiff tendered her written resignation, however, she learned

that her husband did not land the job as he had believed, and she told Michels that she wanted to remain as the practice manager in Midland. The plaintiff conveyed her change of mind to Michels before he had filled the position, but Michels would not allow the plaintiff to remain at her job. He cited performance issues as part of his reasoning. Even then, however, Michels did not accept the plaintiff's resignation immediately, but rather continued her in the position until a replacement could be found and brought to the job.

In addition, the plaintiff applied for three other positions with the defendant and she was not hired. The Court finds that the record contains sufficient evidence from which a jury could conclude that the defendant's actions in refusing to allow the plaintiff to remain in her job after she told Michels that she could continue amounted to "a materially adverse change" in her conditions of employment with the defendant. A jury could conclude that she was effectively terminated from her job. Likewise, the ADA prohibits discrimination in "hiring, advancement or discharge," 42 U.S.C. § 12112(a), and the plaintiff brought forth evidence that suggested adverse action when she was not hired in a new position.

### 3.

■ The defendant also contends that any adverse action against the plaintiff was not illegally motivated. A plaintiff may prove illegal motivation by direct evidence. *See Kiphart v. Saturn Corp.*, 251 F.3d 573, 581 (6th Cir.2001). The plaintiff here does not contend, however, that there is direct evidence of discrimination.

In the absence of direct evidence of causation, the *McDonnell–Douglas* burden-shifting analysis is used to determine whether adverse employment action is illegally motivated. *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir.2004). Under that construct, the plain-tiff first must prove a *prima facie* case. Then the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse action. If the defendant meets that burden, then the plaintiff must offer evidence to create a fact question on whether the defendant's proffered reason is a pretext for discrimination. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir.2004).

■ To establish a *prima facie* case, that plaintiff must show that "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 779 (6th Cir.1998) (citing *Monette*, 90 F.3d at 1186).

In this case, the only contested elements of the plaintiff's *prima facie* case are the first and third elements noted above. The Court has found sufficient proof of those elements, and the other elements are apparent from the record. The Court is satisfied that the plaintiff has made out her *prima facie* case under the ADA.

The defendant contends that it had legitimate reasons for not hiring her for any of the three openings that later developed, although its proffered reason for not allowing the plaintiff to continue in her position is not clearly stated in its brief. The argument appears to be that Michels "was acting consistently with [the defendant's] policy and procedure" when he separated the plaintiff. Def.'s Br. in Sup. of Mot. for Summ. J. at 15. The performance reviews document Michels' concerns over certain aspects of the plaintiff's job performance, especially in the second year of her job.

Michels also purportedly told the plaintiff that she was not dependable. Of course, the main reason upon which the defendant relies as justification for separating the plaintiff is her resignation. The Court rejects that ground for termination on this record. However, the Court will conclude for the purpose of this motion that job performance was the reason for termination; that is a legitimate basis for taking adverse employment action against an employee. *See Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 664 (6th Cir.2000) (citing *Danielson v. City of Lorain,* 938 F.2d 681, 683 (6th Cir.1991)).

■■ In this circuit, a plaintiff can demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.,* 319 F.3d 858, 866 (6th Cir.2003). A leading Sixth Circuit case, *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078 (6th Cir.1994), provides a thorough gloss on each of these methods of proving pretext. There, the court explained that the first method consists of a challenge to the factual basis for the employer's claim—i.e. "evidence that the proffered bases for the plaintiff's discharge never happened." *Id.* at 1084. When using this method, the plaintiff need not introduce additional evidence of discrimination beyond his *prima facie* case. *See Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). The second method usually encompasses an acknowledgment by the employee that events proffered by the employer actually occurred and that they *could* justify dismissal, but it adds the argument that the employer's proffered reason was not the true motivation. "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a . . . cover-up." *Manzer,* 29 F.3d at 1084. The third method calls for a comparison of the treatment of similarly-situated employees outside the protected group, demonstrating that they "were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Ibid.*

■■ The record contains evidence that Michels was critical of the plaintiff's performance as the practice group manager in the Midland family practice because her "personal troubles" were distracting her from her work. The principal reason cited by the defendant for the plaintiff's separation, however, is her resignation. The evidence demonstrates that the plaintiff attempted to retract her resignation well before the defendant acted in reliance on it—that is, before the defendant located a replacement or extended a job offer to someone else. To the extent that the resignation is the proffered reason, the Court believes that a fact finder could conclude that it has no basis in fact.

The defendant also points to the plaintiff's poor attendance as a reason justifying separation from the Midland family practice position. However, the plaintiff's absenteeism and other performance issues recited on the annual review report from August 2002. There was no suggestion in that report that these performance concerns were cause for termination. To the contrary, the report concludes with an optimistic statement that the plaintiff should overcome the challenges she confronted the previous year and recommended that she receive a 3.25 % merit increase. This report predates by two weeks the plain-

tiff's discovery of her seizure disorder and migraine headache ailment and the resulting need for medical leave. The Court concludes that a jury could conclude from this evidence that performance issues were not the true reason for the defendant's insistence that she resign despite her desire to remain in her job, but rather was a pretext for discrimination against her on account of her disability.

■ The plaintiff also claims that discrimination was the reason she was not hired for any of the other three positions to which she applied. The defendant responds that the plaintiff was not hired because other, more qualified candidates were chosen for the positions. In the case of the orthopedic practice manager position, the defendant had offered the job to another candidate before the plaintiff had expressed interest in it.

The Court finds that the plaintiff has failed to come forward with evidence that suggests that the defendant's legitimate reasons for not hiring her in other positions were pretextual. There is no evidence that the proffered reason did not exist: other candidates indeed were hired, and their qualifications met or exceeded those of the plaintiff. The plaintiff has not offered any evidence that the availability of more qualified candidates did not actually motivate the defendant's decision to hire them instead of the plaintiff. Nor has the plaintiff shown that she was similarly situated with the three hires or that the qualifications the defendant articulated as preferred by it were insufficient to warrant its choices to fill the open positions.

The Court finds, therefore, that the plaintiff has produced sufficient evidence to warrant a trial on her claim that the defendant violated the ADA and the PWDCRA by separating her from her job as the practice manager of the Midland family practice. However, the plaintiff has not established a material fact question on all the elements of her discrimination claims based on the failure to hire her for one of the three openings.

### B.

■ The defendant also contends that the plaintiff's claims based on the FMLA should be dismissed. The Family Medical Leave Act grants to eligible employees, such as the plaintiff in this case, up to twelve weeks leave of absence from work for a "serious health condition" that impairs the employee's ability to perform his or her job duties. 29 U.S.C. § 2612(a)(1)(D). If the employee returns to work within twelve weeks, he or she is entitled to the prior job, or to an equivalent position if the prior job is no longer available. 29 U.S.C. § 2614(a)(1). An employer is prohibited from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" under the FMLA, and may not discharge or discriminate in any way against an employee for opposing practices that are unlawful under the FMLA. 29 U.S.C. § 2615. The FMLA creates a right of action allowing employees to recover damages and equitable relief from employers who violate the Act. See 29 U.S.C. § 2617(a)(1). The Act also protects employees from retaliation for exercising their rights under the FMLA. See *Chandler v. Specialty Tires of Am. (Tennessee), Inc.*, 283 F.3d 818, 825 (6th Cir.2002) (citing 29 U.S.C. § 2615(a)(1)).

### 1.

The plaintiff argues that the defendant violated the FMLA be failing to restore her to her position as practice manager following the two medicals that she took in the fall of 2002. However, the evidence conclusively establishes the contrary fact. It is uncontested that the plaintiff returned to her same job following each of

her medical leaves. She was paid disability compensation during her absence from work, and she received the same pay and benefits upon her return.

■ The plaintiff contends that her forced resignation violated the FMLA's requirement of restoration to a former or equivalent job after a leave of less than twelve weeks. However, it is uncontested that the plaintiff was separated *after* she returned to her former position. There is no basis in the record to find a violation of the FMLA on these grounds.

### 2.

The plaintiff also alleges that she was forced to resign—terminated—in retaliation for taking FMLA leave and pursuing her rights under the ADA. Since there is no direct evidence of retaliation, the Court utilizes the *McDonnell–Douglas* burden-shifting approach. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 315 (6th Cir.2001).

■ The elements of a retaliation claim are the same as for those claims brought under the ADA. *Penny v. United Parcel Service*, 128 F.3d 408, 417 (6th Cir. 1997). To establish retaliation, a plaintiff "must show: (1) that he engaged in protected activity; (2) that he suffered adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 814 (6th Cir.1999) (citing *Penny*, 128 F.3d at 417). The analogous state law claims track these requirements as well. *See Bachman v. Swan Harbour Ass'n*, 252 Mich.App. 400, 433 n. 26, 653 N.W.2d 415, 436 n. 26 (2002) (PWDCRA retaliation). A *prima facie* case is established if the plaintiff, at a minimum, provides evidence from which a reasonable jury could conclude that (1) he engaged in protected activity; (2) the exercise of his protected civil rights was known to the employer; (3) the defen-

dant thereafter discharged him; and (4) circumstances suggest that the discharge was due to the protected activity. *See Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990).

■ The plaintiff's separation from employment in this case occurred shortly after she took FMLA leave on two occasions, the first of which occurred only two weeks after a relatively positive performance review, as noted above. Proximity of time between notice and adverse employment action usually, by itself, will not provide sufficient evidence of causation to survive summary judgment. *Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 283 F.3d 818, 826 (6th Cir.2002). *Compare id. with Ford v. Gen. Motors Corp.*, 305 F.3d 545, 555 (6th Cir.2002) (finding temporal proximity sufficient where Title VII retaliation started immediately after the protected conduct occurred) and *Johnson v. Univ. of Cincinnati*, 215 F.3d at 582–83 (finding *prima facie* case for retaliation made when alleged retaliatory activity started the same day the complaint was made). However, the combination of proximity in time with other evidence, such as that, following the protected activity, the plaintiff was treated differently from similarly-situated individuals, can suggest a causal connection sufficient to establish a *prima facie* case of retaliation. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). This so-called "timing-plus" test can be satisfied by hostile comments from supervisors, but such comments are not probative of causation unless the supervisor in question was part of the process that led to the adverse action suffered. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir.2000) (collecting Sixth Circuit cases on this rule, and finding that discriminatory comments made by co-workers other than the those who terminated the plaintiff were not pro-

bative of causation); *see also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir.1998) ("An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of ... discrimination."); *cf. id.* at 355 (noting that "the discriminatory remarks of those who may have influenced the decision not to reassign the plaintiff to other positions in the company may be relevant when the plaintiff challenges the motive behind that decision").

█ In this case, the plaintiff offered evidence of her meetings with her supervisor, Peter Michels, in which Michels made comments about the plaintiff's dependability and the state of her health. The plaintiff's dependability was a feature in her recent performance review, but it does not appear to be a cause for termination or forced resignation until after the plaintiff took FMLA leave due to her seizure disorder. The Court concludes that the plaintiff has offered sufficient evidence of causation to survive the motion for summary judgment on her claim that her separation from her Midland family practice job was in retaliation for exercising her rights under the ADA and the FMLA.

The analysis concerning the defendant's legitimate, non-retaliatory reasons for taking its actions mirrors the analysis of the plaintiff's ADA claim discussed in the previous section. For those same reasons, the Court concludes that a fact question on the issue of pretext exists for the claim based on separation from the Midland practice manager position, but not for the claims based on the refusal to hire the plaintiff for one of the three open positions to which she applied.

### III.

The Court concludes that the plaintiff has established factual issues on the essential elements of her claims for discrimination and retaliation under the ADA, PWDCRA and FMLA concerning her separation from the position of practice manager of the Midland family practice group. The plaintiff has not satisfied the summary judgment on her claims under those statutes arising from the defendant's refusal to hire her for an open position. Nor has the plaintiff established that the defendant failed to comply with the FLMA's requirement of restoring her to her former job following the completion of a FMLA leave.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt# 20] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that Counts 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 of the complaint are **DISMISSED WITH PREJUDICE.**